**Miller A. DIXON, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 21084.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 27, 1967.

Decided April 16, 1968.

---

---

Mr. Ralph J. Temple, Washington, D. C., with whom Messrs. Barrington D. Parker and Wm. Warfield Ross, Washington, D. C., were on the brief, for appellant.

Mr. David P. Sutton, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Charles T. Duncan, Corporation Counsel, Hubert B. Pair, Principal Asst. Corporation Counsel, and Richard W. Barton, Asst. Corporation Counsel, were on the brief, for appellee.

Before BAZELON, Chief Judge, and WILBUR K. MILLER, Senior Circuit Judge, and McGOWAN, Circuit Judge.

BAZELON, Chief Judge:

On October 18, 1965, separate informations were filed in the Criminal Division of the Court of General Sessions charging appellant with two traffic offenses.[1] The cases were continued three times at the request of the appellant, three times by mutual consent, and once at the request of the Government. On March 31, 1966, the prosecutor requested another continuance on the ground that one of the two police officers who had witnessed the offenses was ill. The judge, noting the many prior continuances, refused to grant another one, though he stated that "if it became apparent that the other officer would be needed on rebuttal the Court would consider adjourning the trial at the end of the day to permit the Government to bring in its witness the following day." The prosecutor then stated that he would enter a nolle prosequi so that he could reprosecute at a later date. The court, however, ordered the Government to proceed with its case, and when the prosecutor refused, directed that findings of "not guilty" be entered as to both charges.

The Government appealed these judgments to the District of Columbia Court of Appeals. At the Government's request the District of Columbia Court of Appeals ordered the trial judge to confer with counsel for the purpose of assuring the accuracy of the judge's statement describing the events leading to the findings of not guilty. During this conference, the prosecutor admitted that the prosecutions were brought because appellant went back on an agreement not to file complaints of misconduct against the police officers who stopped him. In his argument to the District of Columbia Court of Appeals appellant raised this issue, as well as asserting that the prosecutor did not have the right to nol pros the case.

The District of Columbia Court of Appeals' brief opinion dealt only with the nol pros issue. The court held that the prosecutor has a right to decide when to nol pros a case except when that right is exercised "in a scandalous or corrupt manner, or shown to be 'capricious and

---

1. Appellant allegedly violated the traffic and motor vehicle regulations of the District of Columbia by (a) failing to obey the instructions given by a police officer; and (b) stopping a vehicle in such a manner as to obstruct the orderly flow of traffic. See D.C.Code § 40–603 authorizing the District of Columbia Commissioners to promulgate traffic regulations and enforce them by criminal penalties.

vexatiously repetitious.'" It concluded that appellant's was not such a case. Dixon v. District of Columbia, 230 A.2d 481 (D.C.App. June 13, 1967).

I need not consider appellant's contention that this holding allows the prosecutor to nullify the court's control over continuances because I believe appellant has demonstrated that, in any event, this prosecution was impermissibly brought. Accordingly, the decisions of the District of Columbia Court of Appeals and the Court of General Sessions should be vacated, and the information dismissed.

I

Although we do not know the full story of the decision to prosecute appellant, the outline is reasonably clear. On June 6, appellant was stopped by two police officers for alleged traffic violations. He was neither charged nor ticketed at that time. Two days later, appellant delivered a written complaint to the police department concerning the conduct of the officers who had stopped him. At this point appellant and the Corporation Counsel's office apparently entered into a tacit agreement: appellant would not proceed further with his complaint and the Government would not prosecute the traffic charges.[2]

On September 1, 1965, however, appellant filed a formal complaint with the District of Columbia Commission's Council on Human Relations. After some "hearings" at the Corporation Counsel's office, appellant refused to withdraw the complaint. As a result he was charged with the two traffic offenses. As the then Chief of the Law Enforcement Division of the Corporation Counsel explained:

> We had discussed it back when it originally occurred and, at the time, everybody was happy to forget the whole thing * * * But three months later he comes in and makes a formal complaint. So we said 'If you are going to play ball like that why shouldn't we proceed with our case?' * * * I had no reason to file until he changed back on his understanding of what we had all agreed on. This is done in many cases.

Without embarrassment, the prosecutor in this case has admitted to a gross abuse of discretion. Of course prosecutors have broad discretion to press or drop charges. But there are limits. If, for example, the Government had legitimately determined not to prosecute appellant and had then reversed its position solely because he filed a complaint, this would clearly violate the first amendment. The Government may not prosecute for the purpose of deterring people from exercising their right to protest official misconduct and petition for redress of grievances. Moreover, a prosecution under such circumstances would be barred by the equal protection clause,[3] since the Government employs an impermissible classification when it punishes those who complain against police misconduct and excuses those who do not.[4]

Appellant's case, however, is more complicated. The record indicates that the

---

2. The police may have been particularly concerned with appellant's complaint because he was a retired detective sergeant and thus could not easily be accused of raising exaggerated cries of "police brutality." In addition, appellant was a Negro and the two officers were white.

   I note that the present Corporation Counsel was not serving at this time, and that the individual prosecutor in charge of appellant's case is no longer with the office.

3. As applied to the Federal Government through the fifth amendment. Bolling

v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

4. Yick Wo v. Hopkins, 118 U.S. 356, 373–374, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) makes clear that equal protection is denied when an otherwise valid law is applied "with an evil eye and an unequal hand. * * *" See also Washington v. United States, (No. 20,267 (D.C.Cir. January 31, 1968) and cases cited therein.

Government's initial decision not to prosecute was based on appellant's tentative agreement not to proceed with his complaint. It would therefore be naive to say that the Government made a legitimate decision not to prosecute and then reversed it solely because appellant decided to complain. On the contrary, it may be that the Government should have prosecuted Dixon and that its failure to do so stemmed from an illegitimate desire to protect the two police officers. And if the Government should have prosecuted Dixon in the first place, there is arguably no reason why it should be barred from prosecuting him now.

But I believe reason is to be found in the need to prevent the type of agreement which was attempted in this case. These agreements have been publicly condemned by the Government of the District of Columbia. In February 1964 the President of the Board of Commissioners of the District of Columbia announced that

> The Corporation Counsel states that he has issued directions to his staff forthwith to discontinue the practice of demanding releases [of claims against police officers] in exchange for the dropping of charges, and not to allow their discretion in the manner of a nolle prosequi to be influenced by a desire to protect and exonerate the arresting officer from civil liability.[5]

The major evil of these agreements is not that charges are sometimes dropped against people who probably should be prosecuted. Much more important, these agreements suppress complaints against police misconduct which should be thoroughly aired in a free society. And

they tempt the prosecutor to trump up charges for use in bargaining for suppression of the complaint. The danger of concocted charges is particularly great because complaints against the police usually arise in connection with arrests for extremely vague offenses such as disorderly conduct or resisting arrest.[6]

Courts may not become the "enforcers" of these odious agreements. We must therefore bar prosecutions which are brought because the defendant refused to promise or reneged on a promise not to file a complaint against the police. Prosecutors will then have no incentive to offer or make such agreements.[7]

I recognize that there is some controversy as to whether the federal courts can use their supervisory power to grant immunity from prosecution. The question has arisen with regard to the entrapment defense. In Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), the Supreme Court stated that this defense was not based on a judicial power to grant immunity because of Government misconduct, but on a legislative intent not to convict entrapped persons. Justice Roberts, joined by Justices Brandeis and Stone, argued that, on the contrary, the "true foundation" of the entrapment defense was the court's power to protect "the purity of government and its processes." 287 U.S. at 455, 53 S.Ct. at 217. In Sherman v. United States, four justices again maintained that the defense was based on "a supervisory jurisdiction over the administration of criminal justice" rather than on legislative intent. 356 U.S. 369, 381, 78 S.Ct. 819, 825, 2 L.Ed.2d 548 (1958). The majority in *Sherman*, though an-

---

5. Letter to the National Capital Area Civil Liberties Union, February 3, 1964. It will be noted that, contrary to the suggestion in the concurring opinion of Judge McGowan, this announcement deals only with agreements not to prosecute and not with retaliatory prosecutions.

6. One of the charges against appellant was failing to obey the instructions of a police officer.

7. Of course there will rarely be cases where an agreement can be proved by the prosecutor's own admissions. But the mere fact of delay in bringing charges or prosecuting the case will be strong circumstantial evidence of an agreement, particularly since the offenses allegedly committed in cases of this sort (disorderly conduct, etc.) are generally disposed of with dispatch.

nouncing its reaffirmance of *Sorrells,* did not discuss this point. Thus, in subsequent entrapment cases, several courts of appeals have felt free to employ the supervisory power approach. United States v. Morrison, 348 F.2d 1003, 1004 (2d Cir. 1965); Whiting v. United States, 321 F.2d 72, 76–77 (1st Cir.), cert. denied, 375 U.S. 884, 84 S.Ct. 158, 11 L.Ed.2d 114 (1963); Accardi v. United States, 257 F.2d 168, 172–173 (5th Cir.), cert. denied, 358 U.S. 883, 79 S.Ct. 124, 3 L.Ed.2d 112 (1958).

In light of this history I do not believe we are foreclosed from granting immunity from prosecution in order to deter blatant Government misconduct.[8] I conclude that in this case our supervisory power must be used to protect "the purity of the government and its processes." Accordingly, I would vacate both judgments below and remand to the trial court with instructions to dismiss the information.

## II

The concurring opinions hold that we need not reach the merits in this case, that we can vacate the judgments below and dismiss the information simply because "it was expressly signified to us by the Government that it had no objection to [that] result." I respectfully submit that these opinions misconceive the function of an appellate tribunal.

The Government never confessed error in this case.[9] In its briefs and oral argument before this court, the Government insisted that there was no properly adduced evidence of a retaliatory prosecution and that, in any event, a retaliatory motive could not foreclose prosecution. It became plainly apparent at oral argument, however, that at least two judges were likely to reject this position. So, after several pointed suggestions from the bench, the Government grudgingly allowed that a decision which simply vacated both judgments and dismissed the information would be acceptable.[10] The Government did not change its view of the merits; it merely sought to avert the risk of rebuke.

But an appellate argument is not a bargaining session. This court cannot strike "why not forget the whole thing?"

---

8. The Fifth Circuit has recently granted immunity from prosecution because of Government misconduct. In United States v. McLeod, 385 F.2d 734 (5th Cir. 1967), an Alabama county whose prosecutions of workers in a Negro voter registration drive violated the Civil Rights Act of 1957 was ordered to return the fines imposed, expunge the records of convictions and reimburse for trial costs. The court said
   The [Civil Rights] Act does not exempt from its prohibition acts directed against persons guilty of crime. * * * [*T*]*he fact that a person is guilty does not end the inquiry.* Police may arrest guilty people for reasons other than their guilt—for example for the reason that they are Negroes who want to register and vote. * * * [Here] every indication is that the police made arrests not to redress violations of the law but simply to harass voting workers. [385 F.2d at 744. Emphasis supplied.]
   I note also that in many cases where federal courts use their supervisory power to bar confessions or other testimony they are, in effect, granting immunity from prosecution. See, *e. g.,* Williamson

v. United States, 311 F.2d 441 (5th Cir. 1962), overturning a conviction because the sole evidence against appellant was the testimony of a contingent fee informer.

9. Even if the Government had confessed error it is clear that this court would not be precluded from deciding the question involved. See Young v. United States, 315 U.S. 257, 62 S.Ct. 510, 86 L.Ed. 832 (1942); Casey v. United States, 343 U.S. 808, 72 S.Ct. 999, 96 L.Ed. 1317 (1956); Upshaw v. United States, 83 U.S.App. D.C. 207, 168 F.2d 167, rev'd on other grounds, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100 (1948); Parlton v. United States, 64 App.D.C. 169, 75 F.2d 772 (1935).

10. The first time Government counsel was asked whether simply vacating and dismissing would be acceptable, he replied that he thought the court should affirm. It was only at the end of oral argument, after his position on retaliatory prosecution had been roundly attacked, that Government counsel, again in response to a direct question from the bench, was willing to accept vacation and dismissal.

bargains to avoid troublesome questions. We should not do so here.

Vacated and remanded with instructions.

McGOWAN, Circuit Judge (concurring):

Although not unsympathetic with Chief Judge Bazelon's strictures upon the concept of the retaliatory prosecution, I limit my concurrence to the result.

At the oral argument of this appeal, these things became clear: (1) the record clearly shows that this was a retaliatory prosecution; (2) it was instituted at a time when the Corporation Counsel's office was under direct instructions from the Commissioners of the District of Columbia that prosecutions of this kind were forbidden; and (3) there is a new Corporation Counsel, with the Assistant who started this prosecution no longer being around. Accordingly, there is little likelihood that, even if we were to reinstate the charge, it would be actively prosecuted. In any event, it was expressly signified to us by the Government that it had no objection to the result which we now reach. Under these circumstances, I conclude that this particular litigation has become meaningless to the point where familiar principles of sound judicial administration alone dictate that both judgments below should be vacated and the charge dismissed with prejudice.

WILBUR K. MILLER, Senior Circuit Judge (concurring in the result only):

This appeal from the clearly correct opinion of the District of Columbia Court of Appeals [1] was improvidently granted, in my view, and the case should not be in this court. But, as it is here, it seems to me that Judge McGowan makes a sensible suggestion as to its disposition. I join him in concurring in the result reached by Judge Bazelon, but not in the latter's opinion.

1. The opinion follows:

"Before HOOD, Chief Judge, MYERS, Associate Judge, and CAYTON (Chief Judge, Retired).

"CAYTON, Judge: In this case, which involved two traffic violations, the District of Columbia appeals from a finding of 'not guilty,' entered after the prosecutor had asked for a continuance and been refused, and had then announced his intention to enter nolle prosequis. The two cases had earlier been continued three times at the request of defendant, three times by mutual consent, and once at the request of the prosecution. On March 31, 1966, the prosecutor asked for a further continuance on the ground that one of two policemen had become ill and had gone home with a temperature of 101 degrees, and that the prosecutor needed the testimony of both police officers. When the trial judge refused to grant a continuance the prosecutor stated that he would enter nolle prosequis. The judge refused to give him the information papers and directed him to proceed with his one witness. The prosecutor declining to proceed, the judge ordered that findings of not guilty be entered. No witnesses had been sworn, no evidence presented, and no motion made by defense counsel to dismiss for failure to prosecute or on any other ground.

"It appears that the trial judge considered dismissing the cases for lack of a speedy trial if a motion for such dismissal had been made by defense counsel; but no such motion was made and the action taken was not a dismissal for want of prosecution but a finding of not guilty folowing refusal to permit nolle prosequis. Both actions were wrong.

"A court has no power to enter a finding of not guilty until a trial has at least commenced. See Clawans v. Rives, 70 App.D.C. 107, 104 F.2d 240, 122 A.L.R. 1436 (1939); Hunter v. Wade, 169 F.2d 973, 8 A.L.R.2d 277 (10th Cir. 1948), aff'd., 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949), rehearing denied, 337 U.S. 921, 69 S.Ct. 1152, 93 L.Ed. 1730.

"Three times within the past couple of years we have ruled that a prosecutor has the right to decide whether to nolpros a case. In one case we said such a right is 'almost absolute.' Smith v. District of Columbia, D.C.App., 219 A. 2d 842, 844 (1966). In two other cases we said such right is not subject to judicial control unless exercised by the prosecution in a scandalous or corrupt manner, or shown to be 'capricious and vexatiously repetitious.' United States v. Foster, D.C.App., 226 A.2d 164, 166 (1967); District of Columbia v. Weams, D.C.App., 208 A.2d 617, 618 (1965). Such did not appear in the case now before us.

"Reversed with instructions to vacate findings of not guilty."