**UNITED STATES, Appellant,**

v.

**Suedell P. OLIVER, Appellee.**

**No. 6440.**

District of Columbia Court of Appeals.

Argued Sept. 12, 1972.

Decided Nov. 29, 1972.

Robert E. L. Eaton, Jr., Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, James A. Adams, and Roger C. Spaeder, Asst. U. S. Attys., were on the brief, for appellant.

George M. Alexis, Washington, D. C., for appellee.

Before KELLY, KERN and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

This appeal by the Government[1] is from an order suppressing implements of crime (D.C.Code 1967, § 22–3601) and a narcotic drug (D.C.Code 1967, § 33–402). After granting the pretrial motion to suppress (the issue to be discussed last), the trial court denied the Government's request for

1. D.C.Code 1967, § 23–104(a)(1) (Supp. V, 1972).

a continuance to permit an appeal from the suppression order, and sua sponte dismissed the information for want of prosecution. We are asked to reverse both the dismissal and the suppression orders; and we do.

Appellee seeks to sustain the dismissal order as a reasonable exercise of discretion since the prosecution did not comply with Superior Court Criminal Rule 111(b)(1), and (c). Those provisions respectively require a written motion for a continuance, service on the opposite party, a hearing—if contested, and a request for continuance at least two days before trial. The trial had earlier been set for April 12, 1972, and the hearing on the motion to suppress for April 6, 1972. The order of suppression was entered on April 6, 1972, and the continuance request was orally made on April 12.

■■■■ The infirmity in appellee's position is that a dismissal under these circumstances cannot be entered thus to defeat the jurisdiction of this court on a timely appeal taken pursuant to D.C.Code 1967, § 23–104(a)(1) (Supp. V, 1972). It is to be noted that the suppression order, if lawful, effectively terminated the prosecution. United States v. Cefaratti, 91 U.S.App.D.C. 297, 301, 202 F.2d 13, 17 (1952). Thus, the trial date of April 12 became academic. It is inescapable that a trial continuance is necessary if a section 23–104 appeal is to be taken. Accordingly, during the time when an appeal may be noted the requirements of Rule 111 become subordinate to the statutory right to appeal under § 23–104.

■■■■ Moreover, and more in point to this case, the basis for the dismissal was an erroneous view of the law respecting bail in cases of such government appeals,[2] and reveals a continuing misunderstanding of prosecutorial authority.[3] In what appears to be a rather unwarranted, if not heated, exchange with the prosecutor, the following was said:

"THE COURT: . . . [Y]ou want me to continue this case, while the man's [sic] in the dock, while you prosecute an appeal. I will not."

\* \* \* \* \* \*

"THE COURT: I'm not going to do it. I am not going to grant the prosecution a continuance. You're going to have to go to the Court of Appeals and get a stay. I refuse to do it, with a man [sic] locked up, while you prosecute an appeal. No way."

\* \* \* \* \* \*

"THE COURT: You can do anything you like. I'm not going to grant a continuance. You should have asked for it two days ago; made some arrangements to have him [sic] released. You're not going to let him [sic] sit in the jail six months, while you make some appeal on a misdemeanor P.I.C. No way. Are you ready to go?"

"THE GOVERNMENT: No, sir. . . ."

\* \* \* \* \* \*

"THE COURT: I made an entry on her, 'motion heard and granted.' The defendant was not committing an offense in the officer's presence and the report was to the effect she had a set of works. Defendant was three or four blocks away, when a citizen told the officer she had a set, and P.I.C. is not included in 23–581 of the D.C.Code. This case is dismissed for want of prosecution. Any appeal in this case, in my

2. D.C.Code 1967, § 23–104(f) (Supp. V, 1972), provides for release on bail, if otherwise possible, during the time of appeal.

3. District of Columbia v. Dixon, D.C.App., 230 A.2d 481 (1967), vacated on other grounds, 129 U.S.App.D.C. 341, 394 F. 2d 966 (1968); United States v. Foster, D.C.App., 226 A.2d 164 (1967); United States v. Kennedy, D.C.App., 220 A.2d 322 (1966); United States v. Askew, D.C.App., Nos. 4281, 4282, ORDER dated March 6, 1967.

view, is frivolous, and for me to attempt to continue to lock this woman up in the cruel and unusual situation of 1010 at this juncture, while you prosecute, what I perceive to be, an absolutely frivolous and pointless appeal, is just totally unfair.

"I'm not going to do it. It's dismissed for want of prosecution. And, she's ordered released."

"THE GOVERNMENT: The Government does object."

"THE COURT: Of course, you object. You object to everything. That's par for the course. You can order a copy of the transcript of that, from the eight track tape recorder.

"There just gets to be a limit of what you can do to people. For an offense like that, if she had plead guilty, she'd get a suspended sentence, for nothing more than an empty syringe stuck up in the side of her wig.

"If you locked everybody up in jail for that, you would have 20,000 people in the jail. She's already done the time for that. If she got 30 days for that, she would get credit for the time served. She has served more time now, than she would if she were convicted of the offense, and, yet, you want to go up on appeal.

"I can't understand it, when there are so many important things for the Court of Appeals to worry about."

From the foregoing excerpts of the transcript it is clear that the underlying rationale for the dismissal was (1) an erroneous belief that appellee would be incarcerated because of the appeal (*see* footnote 2, *supra*); and (2) a preoccupying disagreement with the Government's announced determination to proceed with the appeal.[4]

Accordingly, we hold that the order of dismissal was without authority and void. It will be set aside and the information reinstated. Should the case go to trial it will obviously have to be before another judge.

The facts surrounding the suppression order reveal clear error and require reversal. The arresting officer was on the street investigating a robbery. He saw a crowd of "girls" standing on a street corner. One lady approached the officer and said that a house had just been burglarized. The officer called for a scout car to continue the robbery investigation while he investigated the burglary. Someone accused appellee of that offense, which amounted to taking a television set. Appellee denied the accusation but furnished her name and address. She was then told she could go on her way. While talking to the owner of the television set, another lady whom the officer had known well for about two years approached him and asked why appellee had been permitted to leave. When the officer said he "had nothing to hold her for", the lady said, "Would you like something on her?" The officer responded, "If she's illegal, yes." The lady said, "Well, she's carrying the 'works' underneath her wig." When asked if she was sure about it, she answered in the affirmative.

The officer called for another scout car, which took him to where he had seen appellee walk—a distance of three blocks. He stopped her and asked if she was wearing a wig. When told "no", he said, "Could you pull off your hat, please?" She started to remove her hat and the wig began to slide off at the same time. At this point appellee slipped her left hand under the wig and pulled something out. When asked what it was she said, "Nothing." The officer grabbed her hand, opened it, and recovered a syringe, a needle and a

---

4. In fact the impediment to release on bail pending appeal was a commitment order in a previous case. The transcript of the suppression hearing, six days earlier, reveals that the judge knew this. Apparently it was forgotten in the heat of criticizing the decision.

string, plus a bag containing methadone. Later at the police station, appellee began to eat starch from a box. Such strange behavior prompted an investigation of the contents of the box, which revealed a piece of tinfoil apparently containing heroin.

The basis given for the ruling on the suppression motion was: "By the time [the officer] got that information she was three or four blocks down the street. She wasn't in his presence anymore." In an unnecessary, vain, and somewhat argumentative tone, the court went on:

> "[I]s there probable cause to believe the defendant may have violated PIC statute which is what a set of 'works' has got to be, when she is no longer in his presence and down the street? Is that enough for him to go send a scout car down to pick her up, go way on down, hunt her up, grab her, make her take off her wig, search her, get the set of 'works' without a warrant?"

> "MR. ALEXIS [defense counsel]: No, Your Honor."

> "THE COURT: Aren't you glad I am a good lawyer, Mr. Alexis?"

D.C.Code 1967, § 23-581 (Supp. V, 1972), permits an arrest without a warrant if the officer "has probable cause to believe [a person] has committed or is committing an offense in his presence." The reasoning of the trial judge is fallacious for two reasons. First, appellee "has," in the language of the statute, committed the offense in question by possessing the contraband while in the officer's presence during questioning about the television set. Second, and pretermitting the first reason, appellee was presently committing the offense in the officer's presence when he momentarily stopped her to inquire about a wig.[5]

The question then is not when the information regarding the alleged possession of a set of "works" was received but whether, based on that report, the officer acted reasonably in stopping appellee to investigate further and whether he reasonably seized the items retrieved from the wig and concealed in her hand. We hold that the momentary stop, the inquiry about a wig, and the request to remove the hat were reasonable. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); United States v. Walker, D.C.App., 294 A.2d 376 (1972). See also Long v. District of Columbia, 469 F.2d 927 at 930-931 (D.C. Cir., decided September 6, 1972); and Cheung Tin Wong v. United States Immigration and Naturalization Service, 468 F.2d 1123 (D.C. Cir., decided August 31, 1972).[6] Additionally, the denial of wearing a wig and its obvious presence furnished independent observation and corroboration which gave rise to a reasonable basis to arrest appellee and seize the contents of her hand. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

> As we understand the Fourth Amendment, the issue of reasonableness of police conduct becomes relevant only when there is an invasion of a constitutionally protected right. We do not agree, on the facts of that case or this one, that the person investigated had such a right to be free from any but a reasonable distant observation or approach. In this case the officer invaded no right of appellee by having her in view and following her to where he stopped her to ask about a wig. It is that stop and nothing before that stop which must be tested by the reasonableness standard.

---

5. Appellee had not left the officer's presence in such a way as to make section 23-581 inoperative. She was still in view, three blocks away. Maghan v. Jerome, 67 App.D.C. 9, 88 F.2d 1001 (1937); Safeway Trails, Inc. v. Schmidt, D.C.App., 225 A.2d 317 (1967).

6. Our reliance on *Cheung Tin Wong* in no way should be read as indicating agreement with what appears to be a possible holding in that case expressed at 1127-1128 of 468 F.2d. The court seems to be testing the reasonableness of distant observations even though no rights of the person observed have as yet been invaded.

Tested on any theory made relevant by these facts, the momentary seizure of appellee, the seizure of the contraband from her hand, her arrest, and the seizure of the tinfoil pack from the starch box at the police station were all in conformity with the Fourth Amendment. The orders of suppression and dismissal are therefore reversed and the case remanded with instructions to reinstate the information for further proceedings not inconsistent with this opinion.

So ordered.