Vertia **BOYD**, Plaintiff,

v.

**R. ADAMS**, badge no. 13001, et al.,
**Defendants.**

**No. 73 C 403.**

United States District Court,
N. D. Illinois, E. D.

June 29, 1973.

Kenneth K. Howell, and David C. Thomas, Woodlawn Crim. Defense Services, Chicago, Ill., for plaintiff.

Richard L. Curry, Corp. Counsel, John V. Virgilio, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

### Motion To Dismiss And Summary Judgment

This is an action for declaratory judgment, injunctive relief and damages brought pursuant to 28 U.S.C. §§ 2201, 1331 and 1343 to redress injury arising out of alleged violations of the Civil Rights Act, 42 U.S.C. §§ 1983, 1985, 1986 and 1988. Plaintiff alleges deprivation of her constitutional rights as protected by the 1st, 4th, 5th, 6th, 8th and 14th amendments from the following undisputed facts as alleged in the five count complaint.

Plaintiff, Vertia Boyd, a passenger with two men in an automobile driven by Tommie Jones was ordered out of the car when officers Adams and Hofman, plain clothes policemen in an unmarked car, stopped the car after it turned left onto Laurel Street. The officers after preliminary inquiries searched the three men and the car finding no incriminating evidence and thereafter plaintiff, refusing to be searched, was violently pushed to the unmarked car, where the officers threatened and talked abusively to her. Plaintiff, pregnant at the time, was arrested for unstated reasons by the officers and later charged with disorderly conduct and resisting a police officer and held for five hours before release on bond. Plaintiff alleges she was under no pending charges, no outstanding warrants or indictments and that she was searched without probable cause. Plaintiff sues to recover damages for great bodily injury, pain, internal hemorrhaging, hospital expenses and miscarriage resulting in severe mental distress.

At her trial, plaintiff's attorney asked dismissal of the charges in exchange for plaintiff's release of all defendants from all civil liability, arising out of the arrest, which was agreed to by the Assistant State's Attorney. Plaintiff signed the release and by her same attorney filed this action claiming that the release was void.

Plaintiff joins as defendants the two arresting officers Adams and Hofman, the Chief of Police, James B. Conlisk, the City of Chicago, a municipal corporation, Edward V. Hanrahan, the State's Attorney and his Assistant State's Attorney, Paul Kayman, all in their individual and official capacities.

The complaint sets forth five counts and prays for the following relief:

Count I. prays $5,000 compensatory and $10,000 punitive damages jointly and severally against Adams and Hofman for injury resulting from the alleged unlawful search;

Count II. prays $1,000 compensatory and $5,000 punitive damages jointly and severally against Adams and Hofman for injuries resulting from the alleged unlawful arrest and confinement;

Count III. prays. $1,000 compensatory and $5,000 punitive damages jointly and severally against Adams and Hofman for conspiring to injure plaintiff;

Count IV. prays $2,000 compensatory and $5,000 punitive damages jointly and severally against the City of Chicago and Conlisk under agency principles for the negligent training, supervision, knowledge and ratification of the actions of Adams and Hofman resulting in the injuries to plaintiff;

Count V. prays $2,000 compensatory and $5,000 punitive damages jointly and severally against Hanrahan and Kayman for severe mental anguish and asks this Court to declare the release of civil liability void and unenforceable and to permanently enjoin the practice of coercing releases for dismissal of criminal charges as well as any future prosecution of the charges and harassment against plaintiff.

The defendant City of Chicago, a municipal corporation, moves to strike plaintiff's complaint and to dismiss the City for lack of jurisdiction over the

subject matter and for failure to state a claim upon which relief can be granted. Defendant Conlisk moves for summary judgment claiming that the doctrine of *respondeat superior* is inapplicable and that he may not be held accountable under § 1983 for actions in which he took no personal part. Defendants Hanrahan and Kayman move to dismiss on the grounds of prosecutorial immunity, failure to state a claim upon which relief may be granted and that the release was not coerced. Defendants Adams and Hofman move to dismiss the complaint on the grounds that plaintiff has executed a valid release of all civil liability, and also affirmatively plead the release as a defense.

Plaintiff moves for summary judgment on the release as void as a matter of law.

The central issue in this case revolves around the validity of plaintiff's release, executed in exchange for nonsuit by the state of criminal charges, of all civil liability for damages arising out of her arrest by the defendants. Before deciding this issue, however, it is essential that the proper defendants to the claim be established.

The defendant City of Chicago, a municipal corporation, moves to strike the complaint and dismiss it as a party defendant on the grounds that a municipal corporation is not a "person" within the Civil Rights Act § 1983, therefore affording no jurisdictional ground upon which a claim may be pursued. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Plaintiff, however, argues that *Monroe* was wrongly decided and that municipalities were not included as immune but subject to suit, especially if the state had abolished sovereign immunity. Even if *Monroe* was correct, plaintiff further argues that § 1983 follows local law regarding sovereign immunity, which is governed in Illinois by Ill.Rev.Stat., Ch. 85, § 1–101 et seq., providing for liability with certain exceptions irrelevant in this case, and

claims the City is liable for the intentional acts of officers Adams and Hofman (§ 2–202). Plaintiff also urges that § 1988 grants an extraordinary remedy applicable in this case and that the claim against the City could be joined under the doctrine of pendent jurisdiction to the federal civil rights claim although unsupported by an independent federal jurisdictional base.

Until recently divergent theories of municipal liability under the Civil Rights Act have resulted in confusion among the circuits and plaintiff urges adoption of municipal liability as stated in Carter v. Carlson, 144 U.S.App.D.C. 388, 447 F.2d 358 (1971), rather than the Seventh Circuit's view in accord with *Monroe* in Ries v. Lynskey, 452 F. 2d 172 (C.A.7 1971). While plaintiff argues vigorously for vicarious liability by the City, the United States Supreme Court has now settled this question in three recent cases.

In District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), the Supreme Court reversed Judge Bazelon's interpretation that the District of Columbia was a "State or Territory" within the purview of § 1983, which therefore negated the jurisdiction of that Court. Without this jurisdictional basis, theories of vicarious liability applicable to maintaining municipal liability under that section of the Civil Rights Act evaporated, as to claims arising in the District of Columbia.

The Supreme Court, thereafter in Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), further limited actions under the Civil Rights Act §§ 1983 and 1988 by enunciating greater immunity for municipalities stating that § 1988 was not "meant to authorize the wholesale importation into federal law of state causes of action—not even one purportedly designed for the protection of federal civil rights". 411 U.S. at 703–704, 93 S.Ct. at 1793. By limiting extraordinary remedies under § 1988 to gaps only

as left uncovered by specific provisions of the Civil Rights Act rather than remedies for civil rights protection in general, the Court stated that "§ 1988, in light of the express limitations contained within it, cannot be used to accomplish what Congress clearly refused to do in enacting § 1983". 411 U.S. at 710, 93 S.Ct. at 1796. The effect of *Moor* was supportive to the doctrine of municipal immunity (the County was held eligible for immunity as a sufficient "body politic") as established in *Monroe,* and precluded petitioners' recovering for injury resulting from a shooting by a Deputy Sheriff of Alameda County, California, as against the County of Alameda under the Civil Rights Act.

The Court also in *Moor* held that wide discretionary power was vested in the District Court's consideration of non-federally cognizable claims under the doctrine of pendent jurisdiction and that the federal forum was inappropriate as trier of difficult, unsettled state questions. The lower Court therefore acted properly in declining to exercise pendent jurisdiction over a claim without a federal jurisdictional basis which would unduly complicate the suit, and thus properly dismissed the County.

The third decision which directly bears upon this case is City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), which closed off the avenue of equitable relief against a municipality. The Court ruled that no jurisdiction attaches under 28 U.S.C. § 1343 for suits brought under 42 U.S.C. § 1983 where a municipality is sought to be enjoined in an action for declaratory judgment and injunction. Thus, appellees claimed deprivation of due process when a local liquor licensing committee's hearing resulted in a failure to renew their liquor license on the grounds that community sentiment was against nude dancing in bars. The Supreme Court held that § 1983 did not include a city within the definition of a "person" either for damages or equitable relief and

that § 1983 was not intended by Congress to have a "bifurcated application to municipal corporations depending on the nature of the relief sought against them". 412 U.S. at 513, 93 S.Ct. at 2226. This decision specifically overrules Schnell v. City of Chicago, 407 F.2d 1084 (C.A. 7 1969) and Adams v. City of Park Ridge, 293 F.2d 585 (C.A.7 1961), upon which the lower three-judge District Court relied and settles the last questions of municipal immunity.

The United States Supreme Court, therefore, his interpreted 42 U.S.C. §§ 1983 and 1988 in terms of municipal liability to prevent suits against such political subdivisions whether for damages or equitable relief in all cases, thereby granting full immunity under these sections. The original approach taken in *Monroe,* which sprouted divergent theories of municipal liability, has been now clarified to definitively end such controversy, foreclosing federal jurisdiction directly and limiting it indirectly by recognizing wide discretion in the District Courts to exercise pendent jurisdiction.

In light of the Supreme Court's clarification of municipal immunity defendant, City of Chicago's motion to strike the complaint as to it is granted, as it does not come within the definition of "person" in § 1983.

■■ The defendant James B. Conlisk, Chief of Police, moves for summary judgment upon his affidavit that he did not personally act in the injury of plaintiff and that no responsibility under the doctrine *respondeat superior* binds him to the acts of the arresting officers under § 1983 without a showing of personal involvement. Plaintiff agrees that Conlisk is not bound under *respondeat superior* but emphasizes that a new relationship of supervisor-subordinate is created from which liability would attach to Conlisk for breach of his duty to carefully, competently and professionally train the men under his command. Again relying on Carter v. Carlson, *supra,* since reversed by the Supreme Court, plaintiff argues that supervisory

negligence for failure to properly train subordinates should be actionable. The question presented, however, relates to the requirements contemplated by the Civil Rights Act, which in the case of supervisory personnel are conditioned upon personal involvement, thus eliminating the doctrine of *respondeat superior* from the reach of the statute. Sanberg v. Daley, 306 F.Supp. 277, 278 (N. D.Ill.1969); Salazar v. Dowd, 256 F. Supp. 220, 223 (D.Colo.1966). The statute looks to personal action in depriving the injured of constitutional rights rather than damage alleged by the chain of vicarious responsibility. Bond v. City of Chicago, 71 C 2731 (Judge Will, N.D. Ill.1972). Thus, without direct action causing injury to the plaintiff supported by allegations of the same, defendant Conlisk can not be sued as a proper defendant under 42 U.S.C. § 1981 et seq. As to other claims arising out of alleged negligent supervision by Conlisk not under the Civil Rights Act, the Court does not reach them.

Defendant Conlisk's motion for summary judgment therefore is granted because no issue of material fact as to Conlisk's personal participation in plaintiff's injury is alleged and under the doctrine of *respondeat superior* he is not capable of being sued under the Civil Rights Act merely as a supervisor.

Defendants Hanrahan and Kayman are sued by plaintiff for damages caused by "severe mental anguish". Clearly without allegations supporting direct injury outside the scope of their duties to prosecute in the name of the people of Illinois Hanrahan and Kayman are immune from such action under the Local Governmental and Governmental Employee Tort Immunity Act, Ill.Rev. Stat., Ch. 85, § 1–101 *et seq.* (1969); Littleton v. Berbling, 468 F.2d 389, 410 (C.A. 7, 1972). Since plaintiff makes no such allegations Hanrahan and Kayman are therefore dismissed.

What now remains of this action centers around the issue of the validity of the release of civil liability in exchange for dismissal of criminal charges. Since plaintiff in her motion for partial summary judgment declaring the release void as a matter of law and defendants' motion to dismiss the complaint are contingent upon the effect of the release, its validity will be examined first.

According to the record from the Circuit Court of Cook County, Illinois, Branch 46, plaintiff's attorney requested that a release be given in consideration for a nonsuit of the charges against the plaintiff. The release was executed by the plaintiff herself who subsequently filed this action. The defendants rely on the release to insulate them from liability arising out of alleged injuries of plaintiff, although the practice of securing releases seems to have been discontinued. The release states that:

### GENERAL RELEASE

For and in consideration of the sum of $1.00 and other valuables and consideration, the receipt whereof is hereby acknowledged, the undersigned does hereby release and forever discharge the City of Chicago, its agents and employees including R. Adams #13001 and R. Hofman #8850 from any and all claims and causes of action, he, his heirs and assigns now has or hereafter may have against the City of Chicago, its agents, employees and R. Adams #13001 and R. Hofman #8850 from or arising out of an arrest which occurred on the *2/9/72* in the City of Chicago.

| | Name | Vertia M. Boyd |
| --- | --- | --- |
| | Address | 4838 W. Madison |
| WITNESSES | Name | David C. Thomas |
| | Address | 6020 S. University |
| | Name | |
| | Address | |

Plaintiff contends that it is void and unenforceable because it was executed under duress, because it violates plaintiff's 1st, 14th and due process rights

guaranteed by the Constitution and is unenforceable under contract law as constituting compounding a crime.

The issue of duress in the execution of the release must be divided into two categories: 1) actual duress and 2) inherent duress. Defendants claim that because plaintiff's attorney initiated the release plaintiff is unable to claim duress, but plaintiff claims she executed the release under duress, coercion and fear of harassment.

The issue of actual duress in the execution by the plaintiff, regardless of plaintiff's attorney's actions in securing the release, remains a question of fact disputed by both sides. But the issue of inherent duress, however, is more profound. In Bucher v. Krause, 200 F.2d 576 (C.A. 7 1952), plaintiff was mistakenly shot and arrested as a robbery suspect. He was treated for his wounds at several hospitals, including the one at the House of Correction. He was interrogated at the hospital and a police station and was told a mistake had been made. He nevertheless was charged with resisting arrest. In Court on that charge he executed a release of claims against defendants and subsequently filed suit claiming the release was executed under duress and thus void. Although no apparent duress was evident, the Court found that the execution of the release while plaintiff was restrained at Court on his criminal charge was sufficient for a jury to find duress in the execution under the concept of duress by imprisonment. The inherent duress underlying the release in *Boyd* derives from the same circumstances as *Bucher* and is therefore a question for the jury.

Thus for defendant's motion to dismiss it is enough that the plaintiff alleges duress, which will be taken as true for this motion, King v. Daniels, 72 C 1320 (Judge McGarr, N.D.Ill.1972); but it is also apparent that the allegation is not an empty one when couched in the circumstances surrounding the execution of the release. Defendant's motion to dismiss is therefore denied.

Plaintiff also contends, both in opposition to the defendant's motion to dismiss and in support of plaintiff's motion for summary judgment, that the release is void as a matter of law because it violates her 1st and 14th amendment rights and right to due process, and in support of her motion for summary judgment, that it is void under contract law. Plaintiff claims that there are no issues of material fact because the plaintiff was in fact arrested and secured nonsuit of the charges upon executing the release of civil liability. The question of duress is dropped as to her motion for summary judgment and plaintiff focuses her attack on the legal justification supporting such a release. Defendants, however, contend that there are issues of fact as regard to the question of duress and the lack of good faith of plaintiff's attorney in seeking the release and thereafter filing this action on the grounds of duress.

Plaintiff's motion for summary judgment relies upon three grounds: 1) that the release is an abridgment of her constitutional right to redress grievances and protest official misconduct; 2) that the release violates her right to due process because it is an invalid use of plea-bargaining; and 3) that as a matter of settled contract law the release constitutes compounding a crime and is void as against public policy.

Plaintiff cites Dixon v. District of Columbia, 129 U.S.App.D.C. 341, 394 F.2d 966 (1968) and MacDonald v. Musick, 425 F.2d 373 (C.A. 9 1970) to support her contention that release of defendant's liability in this case abridged her first amendment right.

In *Dixon*, appellant, who allegedly violated a traffic law but did not receive a ticket, filed a complaint with the police department on the conduct of the two officers who stopped him. The appellant thereafter "entered into a tacit agreement" with the Corporation Counsel's office that if appellant would not proceed on his complaint no charges would be brought on the traffic violations. Appellant filed a formal com-

plaint three months later and traffic charges were then brought against him. The Court found that such "agreements" and retaliatory conduct were contrary to a free society's need to air grievances.

While the need to redress grievances is of great importance, *Dixon* is based on two essential facts: 1) that the agreement was only "tacit"; and 2) that the prosecution was clearly in retaliation of the continued proceedings by the appellant. This case, however, relies on entirely different facts because a written agreement was executed for a stated consideration of "$1.00 and other valuables and consideration", while in *Dixon* the agreement was only "tacit" and supported by the government's promise not to prosecute. This Court can not say as a matter of law these agreements are the same when plainly they are different.

In *MacDonald*, petitioner under the charge of drunken driving was asked by the Court to stipulate to probable cause in exchange for the prosecution's dismissal of the charge. When petitioner refused, because such stipulation would bar a civil action, the prosecution was allowed to amend its complaint and added a second charge, upon which the petitioner was eventually convicted. The appellate court stated that

> [w]e do not mean that the prosecutor cannot present such a criminal charge. What he cannot do is condition a voluntary dismissal of a charge upon a stipulation by the defendant that is designed to forestall the latter's civil case. (425 F.2d at 375.)

*MacDonald*, therefore, can be distinguished from this case because no agreement was reached separate and apart, supported by its own consideration and in writing from the action on the criminal charges. This Court can not find as a matter of law that this case and *MacDonald* are the same although the reality of the outcomes are similar.

Plaintiff also argues that this release is an invalid use of plea bargaining. Citing only one case which generally affirms the necessity of plea bargaining in our system of criminal justice, Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), plaintiff does not show any authority to confirm her argument. Without clear precedent to guide the decision of this Court, it can not be said that such a release as a matter of law is unenforceable as an invalid use of plea bargaining or that it is even a form of plea bargaining.

Plaintiff's last argument states that by contract law in Illinois this release is void and unenforceable as a matter of law and constitutes compounding crime. While this may be the case, this Court can not find that the release on its face is violative of either the case law or the statute (Ill.Rev.Stat. Ch. 38, § 32–1). Whereas in Bucher v. Krause, *supra,* the release specifically stated that the consideration given for the promise not to bring civil action was dismissal of the criminal charges by the prosecution, the release in this case recites monetary and other consideration. The underlying *factual* circumstances surrounding the release, however, are crucial to the disposition of this case and consequently can only be resolved at trial. Thus this Court can not rule on those questions of fact at this stage of the proceedings. In view of the criticality of the release validity question the Court will order that the single issue of the validity of the release will be tried prior to the trial of the other issues concerning liability and alleged damages.

Plaintiff's motion for summary judgment on the validity and enforceability of the release is therefore denied and all parties are dismissed from this case except the two officers Adams and Hofman.