**UNITED STATES, Appellant,**

v.

**Paul J. HARVEY, Appellee.**

**No. 10843.**

District of Columbia Court of Appeals.

Argued En Banc Jan. 23, 1978.

Decided Oct. 17, 1978.

---

Peter E. George, Asst. U. S. Atty., Washington, D.C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Albert H. Turkus, and William J. O'Malley, Jr., Asst. U. S. Attys., Washington, D.C., were on brief, for appellant.

Thomas W. Farquhar, Washington, D.C., appointed by this court, for appellee.

Before NEWMAN, Chief Judge, KELLY, KERN, GALLAGHER, NEBEKER, YEAGLEY, HARRIS, MACK and FERREN, Associate Judges, and PAIR, Associate Judge, Retired.

PER CURIAM:

The government appeals the trial court's dismissal, for reason of prosecutorial misconduct, of the indictment in this case. We have jurisdiction to hear this appeal under D.C. Code 1973, § 23–104(c) unless the double jeopardy clause of the Fifth Amendment erects a constitutional barrier. In light of the Supreme Court's decision in *United States v. Scott,* —— U.S. ——, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), we hold that we have jurisdiction; reverse the trial court; and remand this case with instructions to reinstate the indictment.

The events leading to the dismissal of the indictment for first-degree burglary, D.C. Code 1973, § 22–1801(a), and petit larceny, D.C. Code 1973, § 22–2202, began in the factually unrelated case of *United States v. Jamison,* Super.Ct. Nos. 80315 and 80316–74, aff'd D.C.App., 373 A.2d 594 (1977).[1] In *Jamison* the jury convicted one defendant while acquitting a codefendant. Police officers who were present when the verdict was read met it with audible signs of disapproval. After receiving the verdict, Judge Hannon told the jury that in a previous trial both of the *Jamison* defendants had been convicted but their convictions had been reversed on a "technicality."[2] Judge Hannon said he mentioned this only to explain the delay between the indictment and the trial and not to chastise the jury. This revelation upset some of the jurors, and the judge recalled the panel to reiterate his last point.

In the interim, outside the courtroom, several jurors overheard one police officer stating his view that the jury had convicted the wrong man. This same officer confronted one of the *Jamison* jurors outside the courthouse and demanded to know why the jury had refused to convict the other defendant.

■ The jury selection process in *Harvey* began after these events, although neither Judge Alexander nor defense counsel was aware of them at the time. The Assistant United States Attorney in the *Harvey* case later conceded he was aware of the post-verdict events in *Jamison* and he knew that one of the *Jamison* jurors was a potential juror in *Harvey.* That juror was impanelled as were at least two others who had heard about the exchanges. The jury was then sworn.[3]

The next day, July 30, 1975, the trial judge and defense counsel learned of the

---

1. For a fuller recitation of the facts in the case *sub judice,* see the prior division opinion and dissent in this case at 377 A.2d 411. The facts in this case, as it exists before this court, are undisputed. It is the legal significance of these facts which divide the parties and this court.

2. *United States v. Jamison,* 164 U.S.App.D.C. 300, 505 F.2d 407 (1974).

3. For the purposes of the Fifth Amendment analysis, jeopardy attached when the jury was sworn. *Sarfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).

possible jury contamination. After a lengthy examination of the jurors by the trial judge, defense counsel, on August 23, 1975, moved to dismiss the indictment. The trial judge discharged the jury on September 2, 1975, and granted defendant's motion to dismiss the indictment on March 3, 1976, based on a finding that the prosecutor acted improperly in failing to inform the court of the potential jury contamination. This appeal followed.[4]

*United States v. Scott, supra,* disposes of the question whether the trial court's dismissal of the indictment under the circumstances of this case, raises a double jeopardy bar to a retrial. In *Scott,* the Supreme Court held that when the defendant himself seeks to have his trial terminated without any submission to either judge or jury of the issue of his guilt or innocence, an appeal by the government from his successful effort to do so is not barred by the double jeopardy clause. 98 S.Ct. at 2199. This is the situation here.

■ *Scott* preserves an exception to its general rule whereby a defense motion to dismiss after certain egregious behavior on the part of the prosecution will erect a double jeopardy bar. 98 S.Ct. at 2195. Prosecutorial misconduct can range from outrageous abuses for which dismissal and a bar against reprosecution constitute the only acceptable remedy, to transgressions which, while improper, do not warrant erecting a double jeopardy bar. In our view while there was misconduct in this case, it was not of the severity which, under *Scott,* serves to trigger a double jeopardy bar to retrial. Furthermore, assuming without deciding that a court has the power, under its supervisory jurisdiction, to hold that some level of prosecutorial misconduct short of that sufficient to trigger the double jeopardy bar, can justify dismissal of an indictment with prejudice, the misconduct in this case was not of a magnitude to trigger such a sanction.

*Reversed and remanded with instructions to reinstate the indictment.*

NEBEKER, Associate Judge, with whom Associate Judge HARRIS concurs, concurring in the result:

I remain of the view that those who see prosecutorial misconduct in this case are straining with hindsight to find it. That any government attorney would consciously believe that his case could be helped by what occurred in the *Jamison* matter is inherently incredible. Indeed, when this case was first before the trial court, no one had the transcript of the *Jamison* proceedings and no one knew, as we now know, what the officer said to the juror. *See* the original majority opinion in *United States v. Harvey,* D.C.App., 377 A.2d 411, 412 n.1 (1977). I also cannot deem rational any conclusion of misconduct by reason of negligence rather than design.

It also seems to me that our limited resources are being wasted by resolving this case en banc now that *United States v. Scott,* —— U.S. ——, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), has been decided. The case should have been returned to the division as *Scott* deprives it of any en banc issue under Rule 40(c) of the Rules of this court. Surely whether there was prosecutorial misconduct in this atypical situation is hardly a "question of exceptional importance" or one of decisional uniformity under that Rule. I question whether inertia has not replaced reason when the suggestion to return the case to the division for disposition was rejected in favor of the perfunctory per curiam opinion.

To the extent that the per curiam decision expresses an opinion of the court that we somehow might have supervisory power, horse-backed on the double jeopardy clause, to bar retrial for "some level of prosecutorial misconduct short of that sufficient to

---

4. The appeal was argued on February 17, 1977, and decided on August 29, 1977, in an opinion reported at 377 A.2d 411. Rehearing en banc was granted November 23, 1977, and the case was reargued on January 23, 1978. On June 14, 1978, the Supreme Court decided *United States v. Scott, supra.* This court ordered memoranda gauging the effect of *Scott* on the case at hand from counsel on June 26, 1978.

trigger the double jeopardy bar," I must respectfully disagree. The exercise of supervisory power is to be sparingly used. Its use is to be limited to broad rules of general policy—not to correct unique and nonrecurring problems. If jeopardy previously has attached so as to bar retrial, we readily may say so purely as a legal proposition. We do not have the right in the name of the unprincipled concept of what we may think is "bad" to cart out a constitutional principle—itself of flexible meaning and application [1]—and, by putting the two in combination, hold something to be error which does not actually constitute constitutional error.

PAIR, Associate Judge, Retired, concurring in part and dissenting in part:

With the court's disposition of the jurisdictional issue I concur, as I must, since that result is clearly mandated by *United States v. Scott,* —— U.S. ——, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978).[1] What compels my dissent is the ultimate result achieved by the majority and in the process the cavalier treatment given the prosecutorial misconduct determination upon which the trial court based its dismissal of the indictment.

Having ruled that the court has jurisdiction of the appeal, two issues were brought into focus: (1) whether there was a factual basis for the trial court's conclusion that prosecutorial misconduct permeated the jury selection process, and, if so (2) whether there was warrant for the dismissal of the indictment with prejudice.

The facts as found by the trial court and as set forth in (D.C.App.) 377 A.2d 411, 416–19 (1977) are not in dispute. The substance of those findings was that the prosecutor, informed of the events and conversations which resulted in the contamination of the jury panel, withheld that information from both the trial judge and defense counsel. And so it was that with the knowledge and acquiescence of the prosecutor, but without the knowledge of either the trial court or defense counsel, a contaminated jury was impanelled. When later informed from another source the trial court ruled that because of the prosecutor's failure to disclose the contamination, defense counsel had been frustrated in any meaningful voir dire of the jury panel. The cumulative effect of the prosecutor's conduct, the trial court said, was to deprive appellee of his Sixth Amendment right to a " . . . fair, impartial and uncontaminated jury . . . as well as effective assistance of counsel." The trial court for this reason determined, after motion by appellee, to sanction the government for its misconduct by dismissing the indictment, rather than declare a mistrial.

Notwithstanding the clearly defined restrictions on our review function,[2] the ma-

1. *Swisher v. Brady,* —— U.S. ——, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978); *United States v. Scott,* —— U.S. ——, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Sanabria v. United States,* —— U.S. ——, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *Crist v. Bretz,* —— U.S. ——, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *Greene v. Massey,* —— U.S. ——, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Burks v. United States,* —— U.S. ——, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977); *Lee v. United States,* 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977); *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); *Finch v. United States,* 433 U.S. 676, 97 S.Ct. 2909, 53 L.Ed.2d 1048 (1977); and *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

1. In that case, the Supreme Court said:
   We think that in a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant. . . . Rather, we conclude that the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice. . . . [*United States v. Scott,* —— U.S. ——, 98 S.Ct. 2187 at 2197–98, 57 L.Ed.2d 65.]

2. D.C.Code 1973, § 17–305(a). *See Sanders v. United States,* D.C.App., 339 A.2d 373 (1975); *United States v. Bristol,* D.C.App., 325 A.2d 183 (1974); *Johnson v. Lloyd,* D.C.App., 211 A.2d 764 (1965).

jority, substituting their judgment for that of the trial court, hold in effect that the prosecutorial misconduct was of the class of minor transgressions and therefore "not of a magnitude to trigger" the sanction of dismissal. I cannot agree. In my view, the prosecutor's conduct, tending as it did to destroy public confidence in the integrity of the judicial process, was morally and legally indefensible. Accordingly, I refuse to join with the majority in elevating that conduct to the level of judicial approval. *See in this connection and compare, Turner v. Louisiana,* 379 U.S. 466, 471–72, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965); *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

The principle that influenced the trial court to dismiss the indictment

is not strictly limited to situations in which the defendant has suffered arguable prejudice by reason of the prosecutorial conduct. This is so because the principle is not one of fairness to the defendant alone but rather, in Justice Brandeis' words, is one designed to "maintain respect for law; . . . to promote confidence in the administration of justice; . . . to preserve the judicial process from contamination . . .." [*United States v. McCord,* 166 U.S.App.D.C. 1, 17, 509 F.2d 334, 350 (1974), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975).]

To the same general effect is *Dixon v. District of Columbia,* 129 U.S.App.D.C. 341, 345, 394 F.2d 966, 970 (1968), which involved a claim of retaliatory prosecution. Chief Judge Bazelon, speaking for a divided court—all judges concurring in the result—reviewed the cases in which claims of prosecutorial misconduct [3] were sustained, and concluded:

In light of this history I do not believe we are foreclosed from granting immunity from prosecution in order to deter blatant Government misconduct. I con-

clude that in this case our supervisory power must be used to protect "the purity of the government and its processes." Accordingly, I would vacate both judgments below and remand to the trial court with instructions to dismiss the information. [Footnote omitted.]

The sense of all this is that prosecutorial misconduct may so pollute a criminal proceeding as to require in vindication of the integrity of the judicial process and for its deterrent effect, the dismissal of the indictment. *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *Dixon v. United States, supra; United States v. McCord, supra.*

Since I am satisfied that there was warrant for the termination of the prosecution in this case, I would affirm the dismissal of the indictment.

---

3. *Cf. Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), *United States v. Bryant,* 142 U.S.App.D.C. 132, 439 F.2d 642 (1971), where sanctions were imposed because the prosecuting authority failed to comply with the due process requirement of disclosure. *Cf.*

also *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), and *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), where the accused was entrapped by law enforcement officers.