[Civ. No. 6781. Fourth Dist. Oct. 4, 1962.]

CLARENCE E. WHALEY, Plaintiff and Appellant, v. JOHN D. KIRBY et al., Defendants and Respondents.

Clarence E. Whaley, in pro. per., for Plaintiff and Appellant.

Alan M. Firestone, City Attorney, and G. Don Lindberg, Deputy City Attorney, for Defendants and Respondents.

GRIFFIN, P. J.—Plaintiff-appellant Clarence E. Whaley, in propria persona, filed this action for claimed false imprisonment against John D. Kirby, Clarence Meyers and D. E. Thomas, police officers; and A. Elmer Jansen, Chief of Police of the City of San Diego, as well as Dr. H. N. Welborn, Dr. W. E. Wiend and Dr. C. F. Lengyel; R. B. James, County Clerk; H. Fegan, Deputy County Clerk; Judge L. N. Turrentine, Judge Bonsall Noon and the City of San Diego.

He alleges generally that on May 25, 1957, he stood on a sidewalk at Fifth and Broadway in San Diego and displayed a placard in protest of a denial of his driver's instructor's license "by Governor Goodwin Knight and the California Dept. of Motor Vehicles." The sign had on it:

"A BIG HOUSECLEANING IN ORDER. . . . How much crookedness behind this denial?"

His claim was that certain charges were made against him accusing him of publicly, falsely and libelously making scandalous statements to injure the character of certain government officials. The sign further contained an imputation of unchastity and wanton sexual activity involving a young lady employee of the Department of Motor Vehicles, stating that she became infected with a loathsome venereal disease. The sign also contained the accusation that government employees gave and accepted bribes. It also said:

"My Fellow Citizens! For the good of society please take action in ousting the government employees and officials involved in the above mentioned evils.

Signed,

Clarence E. Whaley"

The complaint then alleges that defendant John D. Kirby and other police officers stopped at the curb and asked defendant to sit in the police car with them so they could talk to him and study the wording on the placard; that after plaintiff complied the officers informed him that he was violating a city ordinance by displaying the sign without a permit and that it was a violation of the Penal Code to exhibit obscene and indecent literature; that plaintiff was asked to and he did go to the police station to see what the police captain had to say about it; that after some conversation, some officer directed Officer Kirby to take plaintiff to the psychiatric ward and plaintiff was taken there; that the officers had no process giving them authority to do so and the officers had no reasonable or probable cause to do this or to believe that plaintiff was so mentally ill as to render him dangerous to himself or to others or that he should be suitably restrained for his own protection; that on arriving at the hospital, plaintiff tried to run away and he gave one of the officers a punch in the face and started to struggle with them; that plaintiff was subdued and taken to the ward; that he was strapped, hands and feet, for some hours; that defendants Dr. Wiend and Dr. Lengyel, in their official capacity, falsely imprisoned plaintiff and aided and abetted in his illegal commitment to Patton State Hospital; that they made false accusations in their medical report; that on arrival at Patton, plaintiff wrote a lengthy letter to the F.B.I., the Governor, the Motor Vehicle Department and the police department, to no avail.

Then follows the allegation that defendant H. N. Welborn,

acting as assistant counselor for the County of San Diego, aided and abetted in his false imprisonment by making false statements in his report to the psychiatric board; that defendant R. B. James, County Clerk, and his deputy, defendant H. Fegan, failed to deliver to plaintiff copies of the formal papers of commitment while he was in the psychiatric ward; that defendant Judge L. N. Turrentine, as judge of the superior court, furthered said false imprisonment by illegally committing plaintiff to Patton because plaintiff was not served with the formal charges, had no opportunity to subpoena witnesses, and was not represented by counsel, and that Judge Turrentine said, "You can apply for a jury trial when you get to Patton"; that defendant Judge Noon furthered the false imprisonment by failing to answer and take heed to plaintiff's letter written to him about Judge Turrentine's being requested to release plaintiff from Patton forthwith because his constitutional rights had been violated.

Apparently, some form of trial was granted to plaintiff and an attorney appointed to represent him. Plaintiff alleges that the trial was continued to make certain tests of plaintiff for tuberculosis because he had lost so much weight. He complains of his treatment in Patton. Apparently, he remained there from May 31, 1957, to January 10, 1958.

Plaintiff seeks $200,000 for compensatory damages and $100,000 for punitive damages, plus $100 costs to pay his attorney for obtaining his release on habeas corpus.

Plaintiff added certain amendments to the original complaint, inserting the name of D. E. Thomas, city police officer, as a defendant, and inserting the name of Chief of Police A. Elmer Jansen, as a superior officer who authorized Officers Thomas and Kirby to place the plaintiff in the psychiatric ward, and this allegation is based on a conversation plaintiff had with the city manager and his assistant about July 1958, but he was not told who authorized the officers to place him there, although he "assumed" the chief authorized it. On December 19, 1960, plaintiff filed another amendment to the complaint, inserting the name of defendant Lieutenant Clarence Meyers, charging that on January 4, 1960, plaintiff interviewed these officers and recognized Meyers as the officer on watch on May 25, 1957.

Demurrers, both general and special, were interposed to the complaint and amendments thereto. Apparently, the court sustained the demurrers and allowed 30 days' leave to amend as to all defendants except Judge Turrentine and

Judge Noon. On March 8, 1961, plaintiff filed a document entitled, "AMENDMENTS APROPOS TO HEARING ON DEMURRERS HELD FEB. 9/61."

It alleged generally that defendant Lieutenant Clarence Meyers was the officer on watch at the time and was superior to defendant Officers Kirby and Thomas and as such did authorize them to imprison plaintiff in the psychiatric ward; that they knew plaintiff was not a mentally ill person at the time; that the display of the placard was within his right of freedom of speech; that Dr. Wiend and Dr. Lengyel well knew that these officers had no reasonable cause for taking plaintiff into custody and that Officer Kirby had no probable cause for signing the petition filed with the county clerk on May 25, 1957; that their report which stated that plaintiff had numerous paranoid delusional ideas and recommended commitment to Patton therefor was not done in good faith and was so groundless that it could only be considered as "psychiatric gobbledy-gook." It is then alleged that their lack of good faith deprived them of the immunity provided by Welfare and Institutions Code, section 5047.

It then alleged that defendant Chief of Police Jansen was *negligent* in failing to take action for the suspension or removal of Lieutenant Meyers and Officers Kirby and Thomas as being unfit and incompetent officers after he received constructive notice or knowledge of said false imprisonment of plaintiff in the psychiatric ward, as a result of plaintiff's inquiry of the city manager, who said that the chief of police had been contacted as to who authorized Officers Kirby and Thomas to put plaintiff in the psychiatric ward. Damages are claimed in this respect. A demurrer to the complaint as amended was sustained without leave to amend and the complaint was dismissed.

Plaintiff appeals only from the judgment as to defendants Chief of Police Jansen, Lieutenant Meyers. and Officers Kirby and Thomas.

Plaintiff argues that a cause of action was stated, because when an arrest is made without legal process all that need be alleged to charge an unlawful arrest is the arrest without process, the imprisonment and the damage. (Citing *Kaufman* v. *Brown*, 93 Cal.App.2d 508 [209 P.2d 156]; 22 Cal.Jur.2d § 43, p. 78.)

It is also claimed that a peace officer is liable for false imprisonment when he takes a person in custody without having reasonable cause to believe the person is so mentally ill

that he is likely to cause injury to himself or others. (Citing *Collins* v. *Jones*, 131 Cal.App. 747 [22 P.2d 39]; Welf. & Inst. Code, § 5050.3.)

It is argued that the reasons set forth in the petition instituting the hearing were insufficient to show probable cause. They are factually about the same as here shown and as alleged by the plaintiff. It is argued that the complaint states a cause of action against Chief of Police Jansen, because it shows that he negligently failed and refused to suspend or discharge the police officers involved in this action. (Citing *Fernelius* v. *Pierce*, 22 Cal.2d 226 [138 P.2d 12].)

It is apparent that the complex, detailed and somewhat erratic account of plaintiff's arrest clearly indicates that the officers had reasonable cause to believe that a misdemeanor was being committed in their presence. See Penal Code, sections 650½, 248 and 370; and Municipal Code, section 56.27. However, the arrest was not made by the officers for any of the aforementioned offenses committed in the presence of the officers pursuant to section 836 of the Penal Code. The detention was made pursuant to section 5050.3 of the Welfare and Institutions Code, which provides generally that:

"When any person becomes so mentally ill as to be likely to cause injury to himself or others and to require immediate care, treatment, or restraint, a peace officer . . . who has reasonable cause to believe that such is the case, may take the person into custody for his best interest and protection and place him as provided in this section."

 The weight of authority today holds that the establishment of lack of probable or reasonable cause is a necessary element in an action for false arrest or imprisonment, overruling *Collins* v. *Jones, supra,* 131 Cal.App. 747, in this respect. See also *Coverstone* v. *Davies,* 38 Cal.2d 315 [239 P.2d 876].

 The Legislature has clearly stated the right of an officer to take a person into custody if he had reasonable cause to believe that person to be so mentally ill as to be dangerous to himself or others. (Welf. & Inst. Code, § 5050.3.)

 Accepting as true the account alleged in the complaint, it is clear that there was reasonable and probable cause for the detention and psychiatric examination. The plaintiff was displaying a placard accusing a young lady and numerous governmental officials of the most flagrant and immoral conduct. He refused to delete these references. He broke deten-

tion, struck an officer and accused the officers of being a part of a conspiracy. He was restrained at the hospital. The justification for the detention is clearly shown on the face of the complaint. ▮▮ While normally the conviction or acquittal of the defendant is immaterial in an action for false imprisonment, the findings of psychiatrists and the act of the court in committing a person to a state mental hospital are elements which must be considered in this type of false arrest action. ▮ Reasonable cause is shown herein and the conclusions of the subsequent examination further demonstrate the validity of the observations of the arresting officer. The fact that the doctors made a finding of a paranoid condition and the court ordered commitment substantiates the dangerous mental condition of the plaintiff at the time of the arrest. (*Coverstone* v. *Davies, supra,* 38 Cal.2d 315; *Baer* v. *Smith,* 68 Cal.App.2d 716 [157 P.2d 646].) ▮ The fact of his release on habeas corpus is also immaterial. (*Vallindras* v. *Massachusetts etc. Ins. Co.,* 42 Cal.2d 149 [265 P.2d 907].) The complaint and its amendments fail to state a cause of action because reasonable cause for the detention is overwhelmingly shown on its face. It is clear from the facts alleged in the complaint that plaintiff has concluded from the fact of an interview with Lieutenant Meyers that Meyers authorized or commanded his detention in the psychiatric ward. The facts alleged show that Lieutenant Meyers was not even present when plaintiff was transported to the hospital. The detention was instituted by Officers Kirby and Thomas, acting under the authority of Welfare and Institutions Code, section 5050.3.

The claimed liability of Chief of Police Jansen is predicated on the basis of claimed interviews with the city manager's office in July 1958. There is no positive allegation of his participation in the detention. ▮ Conclusions or deductions from facts, or, as in this case, the absence of facts alleged, do not constitute a cause of action. (39 Cal.Jur.2d § 130, p. 191.) ▮ The amended complaint alleging liability of Chief of Police Jansen because of claimed failure to remove and suspend the police officers involved is not sufficient to show that the officers were incompetent or unfit and that the chief had notice thereof or negligently failed to remove them. (*Michel* v. *Smith,* 188 Cal. 199 [205 P. 113] ; 22 Cal.Jur.2d § 33, p. 70.)

▮ To recover against an officer of a city for his claimed

*negligence,* compliance with sections 801 and 803 of the Government Code, as to the filing of a claim, must be alleged. (*Payne* v. *Bennion,* 178 Cal.App.2d 595 [3 Cal.Rptr. 14].)

Judgment affirmed.

Coughlin, J., and Stone, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 12, 1962.

*Assigned by Chairman of Judicial Council.