[S.F. No. 24060. Dec. 22, 1980.]

DAVID A. HOINES, Plaintiff and Appellant, v.
BARNEY'S CLUB, INC., et al., Defendants and Respondents.

604

**COUNSEL**

David A. Hoines, in pro. per., and James Moore King for Plaintiff and Appellant.

Joseph Posner, John J. Hartford and Theresa L. Pfeiffer as Amici Curiae on behalf of Plaintiff and Appellant.

Yale W. Rohlff, Dane Durham and Owen, Melbye & Rohlff for Defendants and Respondents.

**OPINION**

**CLARK, J.**—Plaintiff appeals from judgment for defendant Nevada corporations and others following jury trial limited to defendants' affirmative defense that plaintiff had, for consideration, released defendants from all claims asserted in the complaint. As will appear, we affirm the judgment.

Plaintiff was arrested on a charge of disturbing the peace by employees or agents of defendant corporations in South Lake Tahoe, Nevada. He was incarcerated in the local Douglas County jail for approximately two hours before being released on $25 bail.

On the following morning—before time for his arraignment—plaintiff appeared at the district attorney's office and discussed the charge and the circumstances of his arrest with Assistant District Attorney William Crowell. Plaintiff indicated he wished to file a criminal complaint against defendant South Tahoe Nugget Club.[1] After talking with

---

[1] At this time plaintiff identified himself as a law student at a California law school. He was then a college graduate with a major field of study in criminal law and the administration of justice. He had worked for two years as a reserve officer for the police department of a major California city.

plaintiff and agents of defendants, Crowell told plaintiff he would oppose issuance of a complaint as he believed probable cause had existed for plaintiff's arrest. Plaintiff elected to abandon his effort for issuance of a complaint.

Crowell then stated he would be inclined to dismiss the charge against plaintiff if plaintiff would sign a release of all claims against other parties involved in the arrest, including the County of Douglas and the State of Nevada. Crowell later testified the primary factor inducing him to propose a dismissal was a concern expressed by plaintiff that the pending charge might result in an adverse effect upon plaintiff's qualification for admission to the California bar following completion of law school studies. Crowell also testified that the likely penalty upon conviction of disturbing the peace would be a $25 fine, that he did not "understand why we would have to go to a jury trial for a twenty-five dollar matter," that because he felt there was probable cause for plaintiff's arrest it would be unfair to fail to provide to the concerned parties protection against a civil action for false arrest, and that recommendation of dismissal was conditioned on execution of a release by plaintiff.

Plaintiff agreed to execute a release in exchange for the dismissal recommendation. There is no evidence his consent was not freely and voluntarily given. He testified that he was not required to enter into a release, although it was apparent, if he "didn't sign it, I was going to be prosecuted," that he was not coerced aside from his awareness of probable prosecution, and that Crowell "seemed to be a decent sort of guy [who] was probably doing what he felt was the best thing."

A release was drafted and signed by plaintiff. It purports to release defendants and others from "all claims...growing out of...the arrest of the under signed."[2] The $25 bail money was returned to plaintiff and the pending charge was dismissed in open court upon Crowell's recommendation.

In the instant action, alleged against defendant corporations as doing business in California, plaintiff seeks damages, including punitive damages, on theories of assault, battery, false imprisonment, malicious prosecution and intentional infliction of emotional distress. In addition

---

[2]The parties do not dispute that if plaintiff is bound by the release it effectively negates liability on the part of all defendants from all claims alleged in the complaint.

to denying allegations of the complaint, defendant corporations alleged affirmative defenses, including the defense "[t]hat prior to the institution of the lawsuit and for valid consideration, plaintiff did, in writing, release these answering defendants from any and all claims allegedly set forth in plaintiff's complaint...." Defendants' motion for separate trial on such affirmative defense was granted. (Code Civ. Proc., § 597.) The sole issue tried was the validity of the release, plaintiff contending it to be void for policy reasons.[3] The jury, impliedly finding the release to be valid, returned a verdict for defendants. The court denied plaintiff's motions for judgment notwithstanding the verdict and, in the alternative, for a new trial. Plaintiff appeals from the judgment and from the order denying the motion for judgment notwithstanding the verdict.

The sole issue presented for review is the validity of the release signed by plaintiff. He contends that an agreement between a prosecutor and a criminal defendant to dismiss a criminal charge in exchange for defendant's waiver of civil action rights against those responsible for his arrest is contrary to public policy regardless of the prosecutor's motives.

In support of his contention plaintiff relies in part on *MacDonald* v. *Musick* (9th Cir. 1970) 425 F.2d 373. In that case the petitioner was arrested by state officers for driving under the influence of alcohol. After a trial date was set the prosecutor moved to dismiss the charge. The court asked if petitioner would stipulate to probable cause for arrest and when he refused the prosecutor withdrew his motion for dismissal. On the date set for trial the prosecutor sought and was granted leave to amend the complaint to allege a second count charging resisting arrest. Petitioner was eventually acquitted in the state court of drunk driving but found guilty of resisting arrest.

In the federal action brought on petition for writ of habeas corpus, the Ninth Circuit noted petitioner had claimed in the state court that his arrest was unlawful, that he had a right to resist such arrest, and that as a result of resisting he was beaten by police. Without expressing a view as to the merits of petitioner's claims, the court stated that based on the substance of such claims, petitioner also "had a claim to a federal right under the Civil Rights Act, 42 U.S.C. § 1983." (*Id.*, at p. 377.) The Ninth Circuit concluded on strong record evidence that the charge

---

[3]The circumstances of plaintiff's arrest and probable cause therefor are not placed in issue.

of resisting arrest was introduced "as the bludgeon behind the attempt" to defeat a "possible civil action" which might be brought by the petitioner. (*Id.*, at pp. 375, 377.)[4] Such deprivation of a right of access to the courts was deemed a denial of due process, "giving rise to a cause of action under the Civil Rights Act." (*Id.*, at p. 377.)

*MacDonald*, of course, is not in point. The issue here is the validity of a release. In *MacDonald* no release or its equivalent[5] was in issue as the accused in that case elected to be prosecuted. While *MacDonald* deals with the propriety of the prosecutor's conduct, a matter at issue in the instant case, plaintiff is not aided by the holding in *MacDonald*. There the prosecutor used the "bludgeon" of new criminal charges in an effort to coerce a stipulation of probable cause and, in fact, prosecuted the accused on such charges only because there was no stipulation. The Ninth Circuit deemed the prosecutor's improper motivations to constitute coercive tactics denying due process of law.

In the instant case the prosecutor engaged in no coercive conduct. The undisputed evidence is that there were no improper motivations in proposing the release and dismissal. In fact, the evidence is that the motivating concerns for the release and dismissal were plaintiff's welfare as a future candidate for admission to the California State Bar, the state's lack of a keen interest in pursuing a jury trial on a misdemeanor charge although there was probable cause therefor, and fairness to other concerned parties who had acted on such probable cause. There were, moreover, no denials of due process for reasons other than coercion. Plaintiff, knowledgeable in criminal legal matters, signed the release knowing full well its import, meaning and effect. He was at liberty on

[4]Some of the trial court record upon which the circuit court relied in assessing motivation for asserting the resisting-arrest charges is stated by the circuit court as follows: "At the hearing of the motion for leave to file an amended complaint ... there were a number of stipulations. [Petitioner] proposed to call as witnesses six deputies in the District Attorney's office. The prosecutor stipulated: 'It is so stipulated that all these Deputies indicated either displeasure with the case or that it was a weak case or that they would not care to prosecute it.' It was further stipulated that one deputy said: 'It appears that the police department [is prejudiced] against this defendant and are out to get him,' or words to that effect...."

[5]A release such as plaintiff executed in the instant case serves essentially the same purpose as would a stipulation of probable cause as proposed in *MacDonald*. Each has been used to acknowledge the waiver or lack of grounds for *any* civil litigation arising out of an arrest. Although the release may be and generally is stated in terms foreclosing broad areas of potential civil liability, a stipulation that an arrest was proper likewise dissolves such potential liabilities.

minimal bail and had the right to trial at his option. He exercised a free will in electing to release all parties from potential civil damages in order to avoid a trial exposing him to criminal liability involving the very issues he now raises. The transaction reflects that plaintiff acted freely and voluntarily. If duplicity were involved in the transaction, it was not on the part of the prosecutor. The facts are thus entirely different from those in *MacDonald*.

Plaintiff also relies on dicta in *Leonard* v. *City of Los Angeles* (1973) 31 Cal.App.3d 473 [107 Cal.Rptr. 378]. However, the holding in that case supports the judgment herein and appears to be the only California case dealing with the issue. The court in *Leonard* held that a voluntary stipulation of probable cause entered into by an accused is admissible to foreclose relief in a civil action for false imprisonment and malicious prosecution. Plaintiff relies on the court's further dicta that: "[if] the stipulation had been made in consideration of the dismissal of the criminal charge, a different situation than here exists might arise. Thus, if made in return for a promise to dismiss, such stipulation could be treated as a contract and subject to a determination whether such promise contravened public policy." (*Id.*)[6]

The *Leonard* dicta raises the central issue. Deeming there to have been a promise or understanding that the prosecutor would move to dismiss the criminal charges if plaintiff would execute the release waiving his right to pursue civil actions arising out of the circumstances attending his arrest, is such a release a nullity because the promise or understanding contravenes public policy?

We note first that the public policy issue is not the precise issue presented in *MacDonald*. Relief in that case was predicated on coercive tactics resulting in a denial of due process. As has been demonstrated, the prosecutor's conduct was free of coercive tactics and, as will be

---

[6]The court's dicta is somewhat ambiguous in view of the court's recognition that "the stipulation undoubtedly was solicited and made in order to foreclose the very type of civil suit with which we are here involved" (*id.*, at p. 477), and that the stipulation was entered into by the accused only "'after consulting his attorney and being informed of the consequences'" (*id.*, at p. 475), following which the criminal complaint was dismissed. The strong implication that the dismissal was in consideration of the stipulation contemplates a contract requiring the prosecutor to move for dismissal. If so, the Court of Appeal obviously did not deem that contract to "contravene public policy." Although the court speaks in its dicta of a "promise to dismiss"—a promise only the trial court could make (*id.*, at pp. 477-478)—no reason appears for distinguishing on public policy grounds such promise from a promise to move to dismiss.

seen, the prosecutor's conduct was motivated by objectives consistent with public policy.

The public policy which plaintiff claims to have been contravened is expressed in Penal Code section 153: "Every person who, having knowledge of the actual commission of a crime, takes money or property of another, or any gratuity or reward, or any engagement, or promise thereof. . .except in the cases provided for by law, in which crimes may be compromised by leave of court,. . ." is guilty of a crime.

Section 153 provides punishment for the common law crime of compounding a crime. (Stats. 1976, ch. 1139, § 125, p. 5095.) ▓ "The elements of compounding may be described as (1) knowledge of commission of the original crime; (2) an agreement not to report or prosecute that crime; and (3) the receipt of consideration." (*Compounding Crimes: Time for Enforcement*? (1975) 27 Hastings L.J. 175, 177; see also, *Bowyer* v. *Burgess* (1960) 54 Cal.2d 97, 100 [4 Cal.Rptr. 521, 351 P.2d 793].) No claim is made that the prosecutor in the instant case personally received any consideration for moving to dismiss charges pending against plaintiff. So far as research discloses the crime may be committed only by a person—including accomplices—receiving consideration pursuant to agreement to frustrate prosecution for criminal conduct. On no occasion has a prosecutor—motivated by what he reasonably deemed to be in the interests of justice—been held to have compounded a crime by promising to dismiss a charge in consideration of an accused's release of civil liabilities or stipulation of probable cause. Certainly such practices have been engaged in routinely by California prosecutors and accommodated by California courts.[7] ▓ We do not deem these practices contrary to the public policy expressed in Penal Code section 153.

---

[7]The following is an enlightening excerpt from the dissenting opinion of Justice James B. Scott when this case was before the Court of Appeal, First District, Division Three: "Municipal court judges for many years have been accustomed to dismissing minor misdemeanor cases on motion of the district attorney upon assurance that law enforcement officers, public agencies or private parties will not be subjected to civil litigation by the criminal defendant. This occurs not infrequently in shoplifting cases, disturbances involving husbands and wives, and a myriad of other disturbance situations. Often, the arrest and temporary detention of a person pending posting of bail or the releasing of the individual on his own recognizance is sufficient to defuse an otherwise volatile situation, to the end that further criminal prosecution is unnecessary and undesirable. Further prosecution in many cases would cause embarrassment in employment, unnecessary matrimonial hostility or, as in the instant case, a possible thwarting of a future career. The reasons are multitudinous for the district attorney not to want to pursue the prosecution of a person arrested with probable cause for a minor public

Plaintiff finally contends that because the Legislature has limited the circumstances pursuant to which a criminal charge may be compromised—and the instant circumstances are not included therein—the arrangements for release in this case are contrary to public policy. Plaintiff relies on Penal Code section 1379, stating that no "public offense can be compromised ... except as provided" in Penal Code sections 1377 and 1378. Those sections provide for the limited circumstances where a person, injured by a misdemeanant, can assert a civil claim. (§ 1377.) If the injured person in such an instance appears in criminal proceedings and acknowledges he has received satisfaction for his injuries, the court may stay such proceedings and discharge the defendant in accordance with procedures set out in section 1378. The prosecutor has no role in the dismissal procedures.

If section 1379 is accorded the broad prohibition suggested by plaintiff, a prosecutor would be required to proceed against all persons claimed on probable cause to have committed a public offense, except as otherwise provided in sections 1377 and 1378. Such strict application of those sections would preclude a prosecutor from making a judgment —either for purely subjective reasons or as the result of discussions which might have been initiated by an arrestee—not to file a formal charge against or prosecute the arrestee. However, a prosecutor *is* vested with the obligation and authority to make those judgments. In both *People* v. *Tenorio* (1970) 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993] and *Esteybar* v. *Municipal Court* (1971) 5 Cal.3d 119 [95 Cal.Rptr. 524, 485 P.2d 1140], this court struck down under the separation of powers doctrine legislative attempts to subject an exercise of judicial power to prosecutorial concurrence. ■ But in both cases it was recognized that the prosecutor—as a representative of the executive—is vested with discretion to forego prosecution in the first instance. (*People* v. *Tenorio, supra,* 3 Cal.3d 89, 94; *Esteybar* v. *Municipal Court, supra,* 5 Cal.3d 119, 127.) "Thus, *Esteybar* and *Tenorio* stand as clear and explicit authority for the proposition that the decision of when and against whom criminal proceedings are to be instituted is one to be made by the executive, to wit, the district attorney." (*People* v. *Municipal Court* (1972) 27 Cal.App.3d 193, 204 [103 Cal.Rptr. 645, 66 A.L.R.3d

offense, in the best interest not only of society but of the individual involved. At the same time, it is reasonable to seek to protect the arresting officer or the complaining individual from the burden of civil litigation arising out of the incident. [¶] If this tool is taken away from the district attorney, their options will be much more limited and there will be a likelihood that many cases which otherwise would have been dismissed will be prosecuted, to the detriment of society as well as the victim and the defendant."

717].)　　■　　It follows that the prohibition of Penal Code section 1379 must be limited to the situation dealt with in sections 1377 and 1378, thereby rendering exclusive those procedures by which misdemeanor charges may be dismissed in the case of civil injuries to the victim of the criminal act. This does not preclude prosecutorial initiative to refrain from charging or moving to dismiss in other proper cases.

In examining public policy considerations bearing on the release-dismissal transaction in the instant case, we are influenced and guided by policy considerations bearing on plea bargaining transactions. While there are clear differences between the two transactions, in a broad sense they serve the same purpose and are affected by the same public policy. In each transaction an accused is confronted with a criminal charge, circumstances exist which—in the state's view—do not require seeking imposition of the full penalty of the law, the accused does not wish to assert his innocence of wrongdoing so as to hazard a more severe penalty should he not prevail at trial, and the state's interests would not be served by a time consuming trial.

The net effect of both a release-dismissal and a plea bargaining transaction is to relieve the state of prosecuting while imposing upon the accused some lesser disability than he might otherwise anticipate. In the plea bargaining transaction the accused is subjected to a known but lesser criminal sanction which he has elected to accept under the circumstances. In the release-dismissal transaction the accused escapes criminal sanctions altogether but is subjected to a civil disability which he has elected to accept under the circumstances. In neither case is there any compulsion preventing the accused from standing his ground and asserting his right to be free from all disabilities, both criminal and civil.

There is one obvious but not fundamental difference between the two transactions. Because a release-dismissal transaction normally concerns itself with lesser acts of criminal conduct, the state may reasonably elect to forego the imposition of any criminal proceedings or sanctions. However, in doing so it must protect those who—because the charges are to be dismissed—might be improperly exposed to claims of civil liabilities due to their involvement in apprehending the accused. In requiring a release from the accused—but only by his free and voluntary election—the state accomplishes both the imposition of the bargained-for disability and protection of those it reasonably deems to

be innocently involved. This, however, is not a significant departure from what is achieved in a plea bargaining transaction.

Because we are unable to discern any policy ground for distinguishing between a properly conducted plea bargaining transaction and a properly conducted release-dismissal transaction, if one is deemed to serve the public policy then the other must also. This court has embraced in unequivocal language plea bargaining as a matter of public policy. "Plea bargaining has become an accepted practice in American criminal procedure, 'an integral part of the administration of justice in the United States.' [Citation.], 'essential to the expeditious and fair administration of justice.' [Citation.] 'The great majority of criminal cases are disposed of by pleas of guilty, and a substantial number of these pleas are the result of prior dealings between the prosecutor and the defendant or his attorney.' [Citation.]...[¶] Both the state and the defendant may profit from a plea bargain. The benefit to the defendant from a lessened punishment does not need elaboration; the benefit to the state lies in the savings in costs of trial, the increased efficiency of the procedure, and the further flexibility of the criminal process. Numerous courts, commissions and writers have recognized that the plea bargain has become indispensable to the efficient administration of criminal justice....[¶] Plea bargaining also permits the courts to treat the defendant as an individual, to analyze his emotional and physical characteristics, and to adapt the punishment to the facts of the particular offense." (*People* v. *West* (1970) 3 Cal.3d 595, 604, 605 [91 Cal.Rptr. 385, 477 P.2d 409].)

After examining all ramifications of plea bargaining and noting its approval by the United States Supreme Court in appropriate circumstances (*Brady* v. *United States* (1970) 397 U.S. 742, 755 [25 L.Ed.2d 747, 760, 90 S.Ct. 1463]), the *West* court stated in conclusion: "... we reiterate our conviction that the plea bargain plays a vital role in our system of criminal procedure ..." (*People* v. *West, supra*, 3 Cal.3d 595, 613.)

Many of the bases stated in *West* as reasons for giving judicial approval to plea bargaining are equally applicable in support of the validity of the release-dismissal transaction as conducted in this case. Surely we cannot embrace a proper plea bargaining transaction while rejecting a proper release-dismissal transaction as against public policy. ■ We conclude that the time honored practice of discharging misdemeanants on condition of a release of civil liabilities or stipulation of

probable cause for arrest, does not contravene public policy when the prosecutor acts in the interests of justice.

The judgment is affirmed.

Mosk, J., Richardson, J., and Manuel, J., concurred.

**TOBRINER, J.**—I respectfully dissent. The majority assert that a prosecutor who has in the first instance decided to dismiss a prosecution in the interest of justice, may nevertheless properly thereafter refuse to dismiss the charges until the defendant agrees to release civil claims against a third party. The majority then hold that the release, although signed under threat of an unjustified criminal prosecution, does not offend public policy. In my opinion the prosecutor, in deciding whether to maintain or dismiss a criminal proceeding, should strictly pursue the public interest: I think it improper for him to agree to dismiss charges only if the defendant will execute an agreement for the benefit of a private party. The dismissal-release agreement may deny the victim of a false arrest legal redress for his injury and may conceal such tortious conduct from judicial scrutiny.

The prosecutor has broad discretion to decide whether or not prosecution of an alleged crime will serve the public interest. (See *People* v. *Tenorio* (1970) 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993]; *Esteybar* v. *Municipal Court* (1971) 5 Cal.3d 119 [95 Cal.Rptr. 524, 485 P.2d 1140].) He may, and should, consider a wide range of factors that bear on the merits of prosecution—the nature of the offense, the nature and severity of the sanctions that will be imposed upon conviction, the personal circumstances of the accused, the expense of prosecution and congestion in the courts.[1] No authority, however, permits him to consid-

---

[1] See American Bar Association Standards Relating to the Prosecution Function (Approved Draft 1971) (hereafter ABA Standards), standard 3.9(b): "The prosecutor is not obliged to present all charges which the evidence might support. The prosecutor may in some circumstances and for good cause consistent with the public interest decline to prosecute, notwithstanding that evidence exists which would support a conviction. Illustrative of the factors which the prosecutor may properly consider in exercising his discretion are: (i) the prosecutor's reasonable doubt that the accused is in fact guilty; (ii) the extent of the harm caused by the offense; (iii) the disproportion of the authorized punishment in relation to the particular offense or the offender; (iv) possible improper motives of the complainant; (v) prolonged nonenforcement of a statute, with community acquiescence; (vi) reluctance of the victim to testify; (vii) cooperation

er the personal or private advantages that might accrue to himself or to third parties from the exercise of his power.[2]

This case amply demonstrates that the prosecutor's consideration of third party interests operates to undermine the legitimate objectives of discretion. By his own testimony, the district attorney had determined, for legitimate reasons, that the misdemeanor charges against plaintiff should be dismissed.[3] Having reached that decision, the district attorney's plain duty was to dismiss the charges.[4] Instead, he threatened to proceed with the prosecution—a prosecution that apparently did not advance the public interest and that would needlessly consume judicial resources—unless plaintiff would accommodate Barney's Club by signing a release of all civil claims against the club.[5]

The decision of the Court of Appeals for the Ninth Circuit in *MacDonald* v. *Musick* (1970) 425 F.2d 373, demonstrates that a prosecutor abuses his discretion in threatening to maintain criminal charges unless a defendant will agree to waive his right to sue for false arrest. In *MacDonald* a criminal defendant had refused to stipulate to probable cause

of the accused in the apprehension or conviction of others; (viii) availability and likelihood of prosecution by another jurisdiction."

It is noteworthy that none of these factors relates to private third party interests.

*See also* National District Attorneys Association, National Prosecution Standards (1977) sections 9.1, 9.2 and 9.3.

[2]See, e.g., ABA Standards, *supra*, standard 3.9 (c): "In making the decision to prosecute, the prosecutor should give no weight to the personal or political advantages or disadvantages which might be involved or to a desire to enhance his record of convictions."

For a general discussion of prosecutorial discretion and the need for more rigorous structuring and review of the exercise of trial discretion, see Davis, Administrative Law Treatise (1979, 2d ed.) at pp. 216-304.

[3]On direct examination as a defense witness, the district attorney testified that "[h]e [plaintiff] advised me that one of the reasons why he would like to have the charges against him dismissed was that he was a law student and that he felt that the charges against him would have an adverse effect upon his being qualified to take the Bar exam in the state of California." Asked if plaintiff's concern about the bar was a factor in his ultimate decision to dismiss the charges, the district attorney stated that "was primarily the only factor that I went on." He also explained that ". . . I didn't understand why we would have to go to a jury trial for a $25 matter."

[4]Conversely, if the district attorney had concluded that the public interest required prosecution, he should have proceeded. It is equally as improper to dismiss charges in exchange for a release of civil claims when prosecution is warranted, as to do so when prosecution is unwarranted.

[5]On cross-examination the district attorney explained that he ". . . would have dismissed the charges if Mr. Hoines would sign a release, but I wanted it understood that there was a criminal action pending against him. . . . The only reason why I didn't go in right at that time and request an outright dismissal had nothing to do with whether I thought the case was good or bad. It was just whether or not Mr. Hoines had submitted his release at that time."

for arrest[6] in return for dismissal of drunk driving charges. Following this refusal the prosecutor filed an additional charge of resisting arrest. Upon his conviction on the latter charge, MacDonald filed, and the court granted, a petition for habeas corpus. The court condemned the prosecutor's attempt to condition the dismissal on a stipulation to probable cause, reasoning that the prosecutor improperly exercised his discretion and observing that the Canons of Ethics "have long prohibited the misuse of the criminal process by an attorney to gain advantage for his client in a civil case." (425 F.2d at p. 376.) (See ABA Code of Prof. Responsibility.(1969) DR 7-105, EC 7-21.) The court thus granted habeas corpus relief on the grounds that the attempt to condition the dismissal on a stipulation to probable cause interfered with defendant's assertion, by civil action, of his federal and state civil rights to resist an unlawful arrest. (425 F.2d at p. 377.)

The heart of the offense in *MacDonald*, as here, was the initial use of the prosecutor's power with the intent to foreclose a civil action. "It is no part of the proper duty of a prosecutor to use a criminal prosecution to forestall a civil proceeding by the defendant against policemen, even where the civil case arises from the events that are also the basis for the criminal charge. We do not mean that a prosecutor cannot present such a criminal charge. *What he cannot do is condition a voluntary dismissal of a charge upon a stipulation by the defendant that is designed to forestall the latter's civil case* . . . . Nor can the prosecutor, because of failure to obtain the demanded stipulation, then introduce another charge in the hope of defeating the possible civil action of the defendant." (425 F.2d at p. 375, italics added.) Thus, the court indicated that, while the addition of the second charge was improper, the initial attempt to obtain a stipulation in return for dismissal was equally improper.

The majority incorrectly seek to distinguish *MacDonald* on the theory that the present plaintiff "voluntarily" agreed to the release. The threat to maintain a criminal prosecution is, however, necessarily coercive. An innocent defendant may well prefer to surrender his right to redress for false arrest rather than undergo the risk, expense, and incon-

---

[6]As the majority explain (*ante*, p. 608, fn. 5), a stipulation to probable cause serves the same function as a release of civil liability: that is, when lack of probable cause for an arrest is an essential element of the tort of false arrest (*Whaley* v. *Kirby* (1962) 208 Cal.App.2d 232 [25 Cal.Rptr. 50]), such a stipulation effectively forecloses a civil action for false arrest.

venience of a criminal trial.[7] Thus if the threat of prosecution is improper—because, as in this case, the prosecutor had determined that the interest of justice does not require prosecution—the arrestee's submission to that threat does not render the bargain voluntary.[8]

Another federal court of appeals decision, *Boyd* v. *Adams* (7th Cir. 1975) 513 F.2d 83, makes clear the involuntary character of a release of civil claims brought about by the threat of criminal prosecution. In that case the plaintiff executed a release in return for dismissal of charges of disorderly conduct and resisting a police officer. Plaintiff was not in custody when she executed the release and no evidence indicates that the prosecutor engaged in overtly coercive conduct.[9] Plaintiff testified, however, that she feared conviction and a possible jail sentence. The court held the release void, finding that it did not establish a knowing waiver of plaintiff's rights because plaintiff executed it under inherently coercive circumstances.

I conclude that the *MacDonald* decision is on point. Its ringing denunciation of agreements that "condition a voluntary dismissal of a charge upon a stipulation by defendant that is designed to forestall the latter's civil case" (425 F.2d at p. 375) should guide this court in the resolution of the present case.

The essential defect in such agreements, apart from their coercive nature, is that they do not achieve any legitimate function of the criminal process. That defect distinguishes the dismissal-release transaction from plea bargaining, in which the state benefits by saving the expense of trial and expediting the disposition of the criminal case. (See *People* v. *West* (1970) 3 Cal.3d 595, 604 [91 Cal.Rptr. 385, 477 P.2d 409].) The present agreement is a particularly egregious example, since, in this case, unlike *MacDonald* and *Boyd* v. *Adams*, the state does not even

---

[7] The plaintiff in this case was particularly concerned about the impact of a criminal record upon his admissibility to the bar; that concern added to the coerciveness inherent in the situation.

[8] The majority attempt to distinguish *MacDonald* on the ground that the parties did not agree to a release or stipulation in that case. The issue in *MacDonald* did not turn on a release or stipulation only because the defendant in that case refused to accede to the bargain offered by the prosecutor. The reasoning of *MacDonald*, in condemning the prosecutor for attempting to bar defendant's right to institute a civil action, leaves little doubt that the court would have found any such release or stipulation contrary to public policy.

[9] In fact, the release discussions were initiated by plaintiff's attorney. The court found this fact irrelevant in light of the inherently coercive circumstances. So long as the release practice is common, the court reasoned, a defense attorney will be obligated to explore that alternative, rendering it irrelevant who initiates the discussion.

benefit by avoiding civil liability. The instant transaction benefited only Barney's Club, a private party who obtained a bar to civil liability without risk or expense. Indeed, the prosecutor actually threatened to incur needless state expenditure for an unnecessary criminal trial in order to coerce plaintiff to agree to the release.

Implicitly recognizing that a dismissal-release agreement that served solely private interests might offend public policy, the majority suggest that such agreements serve the public interest by protecting those who "might be *improperly exposed* to claims of civil liabilities due to their involvement in apprehending the accused." (maj. opn., *ante*, at p. 612.) (Italics added.) The words "improperly exposed" call for careful scrutiny because the state obviously has no interest in barring meritorious actions for false arrest. The majority opinion appears to assume, however, that in the present case, and in all dismissal-release transactions, the persons effecting the arrest are "improperly exposed" to civil liability; it does not recognize that the threat of criminal prosecution might induce the arrestee to surrender a meritorious cause of action.

While some potential actions for false arrest are improper, it is not the function of the prosecutor to decide whether a potential civil suit has merit. He is neither judge nor jury; he hears no evidence; his decision is not subject to judicial review. To permit him to use the heavy threat of criminal prosecution to induce potential plaintiffs to waive their right of action presents too great a risk that he will use the power to bar meritorious cases, leaving the victims of unlawful arrest without civil redress and concealing misconduct by the arresting party from judicial scrutiny.[10]

Judge Bazelon called attention to this danger in *Dixon v. District of Columbia* (D.C. Cir. 1968) 394 F.2d 966. In that case defendant tacitly agreed not to file a police misconduct charge in return for a nolle prose-

---

[10]Alert to the danger posed by agreements to conceal wrongful conduct, the Legislature has provided in Penal Code section 153 that any person who, "having knowledge of the actual commission of a crime, takes money or property of another, or any gratuity or reward, or any engagement or promise thereof, upon any agreement or understanding to compound or conceal such crime, or to abstain from any prosecution thereof" is himself guilty of a crime. The dismissal-release transaction in the present case may violate that section; although the majority find the section inapplicable because the prosecutor did not personally profit from the release (maj. opn., *ante*, at p. 610), at least one commentator has indicated that a person may be guilty of compounding a crime although the consideration for that act accrues to a third party. (See *Compounding Crimes: Time for Enforcement?* (1975) 27 Hastings L.J. 175, 178 and cases there cited.)

qui. When defendant nevertheless filed the misconduct charge, the prosecutor reopened proceedings on the original traffic offense. The court held the prosecution illegal, reasoning that, although the charges were arguably sound, the courts "... may not become the 'enforcers' of these odious agreements." (394 F.2d at p. 969.) The evil of such agreements, Judge Bazelon asserted, is not that proper charges may be dropped, but that they "suppress complaints against police misconduct which should be thoroughly aired in a free society. And they tempt the prosecutor to trump up charges for use in bargaining for suppression of the complaint. The danger of concocted charges is particularly great because complaints against the police usually arise in connection with arrests for extremely vague offenses such as disorderly conduct or resisting arrest (fn. omitted)." (*Ibid.*)

The spectre of concealed misconduct by private security forces is equally disturbing. Private security guards are an increasingly significant element in our system of control of crime, and they are heavily relied upon for crime prevention in the private sector. (Harrigan & Sundance, *Private Police in California: A Legislative Proposal* (1974) 5 Golden Gate L.Rev. 115, 116-117.) Private security guards perform functions similar to those of the public police; yet studies have shown that persons employed in this capacity are often less qualified than those serving as public police officers. Private security guards, moreover, are frequently poorly trained and supervised, and subject to less stringent internal review procedures, than are the public police. (*Id.*, at pp. 119-129.) This court has expressed concern that searches by private security forces present a "particularly serious threat to privacy" (*Stapleton* v. *Superior Court* (1968) 70 Cal.2d 97, 100, fn. 3 [73 Cal.Rptr. 575, 447 P.2d 967]); we have recently held that searches by private security guards are subject to constitutional proscriptions. (*People* v. *Zelinski* (1979) 24 Cal.3d 357 [155 Cal.Rptr. 575, 594 P.2d 1000].) Yet the majority now encourage public prosecutors routinely to protect such private personnel from civil actions that could serve to uncover patterns of abuse.

That danger is not obviated by this prosecutor's good faith belief that defendant's guards had acted with probable cause. The prosecutor's investigation of the alleged misconduct was limited to a telephone conversation with an employee of Barney's Club and can scarcely be deemed conclusive. While the prosecutor acted within his proper discretion in declining to file criminal charges against Barney's Club, he had, as discussed above, no discretion to dispose of a civil claim against the

club. On the contrary, the civil remedy is a significant mechanism for exposing and determining abuses of power; when the public prosecutor declines to pursue a charge of misconduct, he should be particularly sensitive to the need to preserve the alternative civil remedy.[11]

The district attorney properly exercised his discretion in reaching his original decision to dismiss the charges against plaintiff and, in so doing, would have served the best interests of the system of criminal justice. The salutary effect of that decision was seriously undermined by the district attorney's insistence that plaintiff surrender a valuable property right in return for the dismissal of charges. The prosecutor could not properly exact a penalty from plaintiff or use the criminal process to forestall plaintiff's civil action against Barney's Club. Such conduct is a dangerous and unwarranted extension of the plea bargain concept and it should not be condoned by this court.

Bird, C. J., and Newman, J., concurred.

---

[11]Compare *Safer v. Superior Court* (1975) 15 Cal.3d 230, 238 [124 Cal.Rptr. 174, 540 P.2d 14]: "The absence of any statute empowering the district attorney to appear in private litigation such as the instant case demonstrates, moreover, legislative awareness that our legal system has long depended upon the self-interested actions of parties to pursue a dispute to its conclusion, or to decide, alternatively, that further time-consuming litigation serves no one's best interests [fn. omitted]. Thus the district attorney's intrusion into this arena of conflicting private interests serves neither the public interest nor the statutory intent."