750 F.2d 298
 53 USLW 2334
 Robert E. BUSHNELL, Appellant,
v.
Philip L. ROSSETTI, Individually and as a Police Officer
Baltimore City Police Dept.; D.L. Custer, Individually and
as a Police Officer Baltimore City Police Dept.; Frank J.
Battaglia, Individually and as Police Commissioner and Mayor
and City Council of Baltimore, Maryland, A Municipal
Corporation, Appellees.
 No. 83-2125.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 2, 1984.
Decided Dec. 21, 1984.
 
 Robert E. Bushnell, Baltimore, Md., appellant pro se.
 Robert C. Verderaime, Baltimore, Md. (Verderaime & DuBois, P.A., Millard S. Rubenstein, Baltimore, Md., on brief), for appellees.
 Before WINTER, Chief Judge, PHILLIPS, Circuit Judge, and JOHN R. HARGROVE, United States District Judge, District of Maryland, sitting by designation.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 Robert E. Bushnell appeals from the district court's grant of summary judgment for the defendants in his federal civil rights action under 42 U.S.C. Sec. 1983 against several agents of the City of Baltimore. The district court granted the defendants' motion on the basis of a formal release of defendants executed by Bushnell after a determination of Bushnell's guilt but before his sentencing in a criminal case that arose from the same incident as Bushnell's Sec. 1983 claim. We affirm.
 
 
 2
 * On November 18, 1981, Bushnell, an attorney licensed to practice in the State of Maryland, was arrested in Baltimore's Central District Police Station and charged with disorderly conduct and resisting arrest. Bushnell had gone to the police station in the first instance to report what he believed to be a crime he had just witnessed on a city sidewalk. Because of what Bushnell apparently perceived to be lack of appropriate interest by the police in the incident he was reporting, Bushnell became agitated and verbally abused the officers. The officers responded by arresting Bushnell there in the station and charging him with disorderly conduct and resisting arrest.
 
 
 3
 Bushnell claims, and for the purposes of reviewing the summary judgment we must assume, that the arresting officers subjected him to a variety of tortious conduct including assault, battery, defamation, false imprisonment and conversion of Bushnell's property. On that basis Bushnell brought this federal civil rights action under 42 U.S.C. Sec. 1981, et seq., against the police officers, the Baltimore Police Chief and the Mayor and City Council of Baltimore alleging deprivation of constitutional rights without due process.
 
 
 4
 This action was filed on November 17, 1982. Six days later, on November 23, 1982, Bushnell was tried in the District Court of Maryland for Baltimore City on the disorderly conduct and resisting arrest charges. Counsel for the civil defendants attended Bushnell's state criminal trial as observers. At the conclusion of all the evidence in Bushnell's criminal trial, the court found Bushnell guilty on both charges. At the request of counsel for the civil defendants the assistant state's attorney in Bushnell's case then requested a short recess before making a recommendation as to Bushnell's sentencing. The court recessed.
 
 
 5
 Counsel for the civil defendants then approached Bushnell and his attorney. These counsel noted the professional problems a criminal conviction would pose for Bushnell, and then proposed an agreement whereby Bushnell would dismiss with prejudice this suit against the civil defendants if in exchange counsel for the civil defendants would persuade the assistant state's attorney in Bushnell's criminal trial to recommend probation before judgment under Maryland Code art. 27, Sec. 641. By this means attorney Bushnell would be spared a criminal record and the civil defendants would be spared defending a federal civil rights action against them. After brief consultation with his attorney Bushnell accepted the proffered agreement.
 
 
 6
 After some initial reluctance on his part, the assistant state's attorney was persuaded to make the probation recommendation when the court reconvened. The court reconvened, the prosecutor recommended probation before judgment, and the court followed the recommendation, granting Bushnell probation before judgment.
 
 
 7
 In the months following the criminal trial, however, Bushnell refused to sign a proposed order dismissing this civil action with prejudice. In March 1983 counsel for the civil defendants moved the federal district court for summary judgment on the basis of the November 1982 agreement. The district court took evidence on the motion.
 
 
 8
 In the district court Bushnell conceded he had agreed to dismiss this suit with prejudice in exchange for the November 1982 sentencing consideration, and conceded that the civil defendants had fulfilled their part of the agreement. Bushnell argued however that the entire agreement was void as against public policy and thus should not be enforced by the district court.
 
 
 9
 The district court found as a matter of law and public policy that the dismissal agreement was valid and entered summary judgment for the defendants, in effect enforcing the agreement between the parties. This appeal followed.
 
 II
 
 10
 Bushnell contends broadly that all agreements releasing civil rights in exchange for criminal sentencing consideration are void as against public policy. He advances the rationale that enforcing such agreements necessarily would tend to stifle full inquiry into allegations of deprivations of constitutional rights and suppress complaints about police misconduct that should be openly aired in a free society. Furthermore, it would give prosecutors an incentive to trump up criminal charges against potential civil plaintiffs in order to have something with which to exact releases of related civil rights claims. In consequence, he contends, the dismissal agreement cannot be allowed to bar his claim here.
 
 
 11
 In support of this contention and rationale, Bushnell, conceding that the case is one of first impression in this circuit, relies upon three decisions of other circuit courts of appeals. None of the decisions relied upon is directly on point, but in a variety of contexts each does consider the policy and (in one case) constitutional implications of criminal prosecutions carried out or conditioned upon release or dismissal of threatened or pending civil rights actions involving related occurrences. For reasons that follow, we conclude that the decisions do not establish or persuasively support our adoption of the broad principle for which Bushnell contends. Instead, the cases are distinguishable in ways dispositive against his contentions, even were their holdings adopted. To indicate why, we look to the three decisions in some detail.
 
 
 12
 In Dixon v. District of Columbia, 129 U.S.App.D.C. 341, 394 F.2d 966 (1968), a black motorist had allegedly been racially harassed in the course of being arrested by two white officers for traffic violations. The city counsel agreed not to prosecute the traffic violations if the motorist agreed not to sue for the officers' misconduct. The arrestee violated his agreement not to sue and the prosecutor retaliated by filing charges on the traffic offenses. The court per Chief Judge Bazelon wrote:
 
 
 13
 The Government may not prosecute for the purpose of deterring people from exercising their right to protest official misconduct and petition for redress of grievances ... the major evil of these agreements is not that charges are sometimes dropped against people who probably should be prosecuted. Much more important, these agreements suppress complaints against police misconduct which should be thoroughly aired in a free society. And they tempt the prosecutor to trump up charges for use in bargaining for suppression of the complaint. The danger of concocted charges is particularly great because complaints against the police usually arise in connection with arrests for extremely vague offenses such as disorderly conduct or resisting arrest. ... We must therefore ban prosecutions which are brought because the defendant refused to promise or reneged on a promise not to file a complaint against the police. Prosecutors will then have no incentive to offer or make such agreements.
 
 
 14
 Id. 968, 969. Thus the court's policy discussion in Dixon was undertaken in the context of a criminal prosecution conducted in overt retaliation for a citizen's reneging on an agreement not to file a civil claim.
 
 
 15
 Prosecutorial retaliation also provided the context for the Ninth Circuit's policy discussion in MacDonald v. Musick, 425 F.2d 373 (9th Cir.1970). In MacDonald, a citizen was charged with driving under the influence. At first the prosecutor moved to dismiss the charge, but when the citizen refused to stipulate to probable cause (and thus kept open his option to bring a civil action against the arresting officers) the prosecutor amended the charge to include a resisting arrest charge upon which there was a much greater likelihood of conviction. In granting habeas corpus relief following the citizen's conviction, the court discussed the prosecutor's action in the case and wrote:
 
 
 16
 It is no part of the proper duty of a prosecutor to use a criminal prosecution to forestall a civil proceeding by the defendant against the policemen, even where the civil case arises from the events that are also the basis for the criminal charge. We do not mean that the prosecutor cannot present such a criminal charge. What he cannot do is condition a voluntary dismissal of a charge upon a stipulation by the defendant that is designed to forestall the latter's civil case.
 
 
 17
 Id. at 375.
 
 
 18
 Finally, in Boyd v. Adams, 513 F.2d 83 (7th Cir.1975), the Seventh Circuit relied on Dixon and MacDonald to find invalid as a matter of public policy releases of civil rights actions secured in exchange for dismissals of criminal charges. Id. at 88-89. In Boyd an arrestee brought a federal civil action against the arresting police officer for damages allegedly incurred by the arrestee during her illegal arrest and search. The defendants pleaded in bar the release signed by the arrestee in exchange for dismissal of the charges against her. The court of appeals reversed the district court's holding for the defendants, concluding on the authority of Dixon and MacDonald that the release was unenforceable as a defense in the civil action.
 
 
 19
 Dixon, MacDonald and Boyd therefore do not stand for the proposition that all releases of federal civil rights, without regard to the context or agreed exchange, are against public policy. Instead they express a more narrowly confined public policy (in some contexts a constitutional prohibition) against use of government's prosecutorial power either to exact releases of related civil rights claims or to retaliate for civil prosecution of such claims. Such an abuse of prosecutorial powers indeed has the potential for forestalling exposure of possibly unconstitutional or illegal government practices. We therefore have no quarrel with the holdings in these cases that recognize this danger and, in effect, forestall it by denying its fruits in the different contexts presented in those cases.
 
 
 20
 But that danger is not present in the instant case. Here the police practices that are the subject of Bushnell's Sec. 1983 claim had already been exposed to full public inquiry when the dismissal agreement was executed. In Bushnell's completed criminal prosecution the determination of guilt had necessarily involved inquiry into and rejection of his defense based upon the very police conduct now challenged in the instant action. Under these circumstances there was no possibility that prosecutorial power would be abused in the way condemned in Dixon, MacDonald and Boyd.
 
 
 21
 We see no comparable public policy concerns in relation to releases given in exchange for post-conviction sentencing recommendations. While it is true that by this means a further civil inquiry into police conduct is avoided, that inquiry would simply be duplicative in a civil forum of one already publicly made in the criminal forum. We do not believe that the risks to public interests created by enforcing releases given under these circumstances is sufficiently great to hold them void as against public policy on that basis.
 
 
 22
 We therefore reject Bushnell's broad contention that any release of civil rights claims in exchange for criminal sentencing considerations is per se void and unenforceable.*
 
 III
 
 23
 This is not to hold, however, that all such releases are, on the contrary, entitled per se to enforcement. Because the claims released are constitutionally based, agreements to release them can only be enforced if the decision to release was "voluntary, deliberate, and informed." Jones v. Taber, 648 F.2d 1201, 1203 (9th Cir.1981) (post-conviction, pre-sentencing release of related civil rights claim against police officers for $500 cash payment not enforceable on summary judgment; genuine issue raised as to voluntariness).
 
 
 24
 Here the record clearly supports the determination that Bushnell's decision to release was voluntary, deliberate, and informed, and so entitled to enforcement. Bushnell himself is an attorney and was fully aware of the legal consequences of the release agreement he struck with the defendants' counsel. The agreement was executed only after Bushnell had consulted privately with his own attorney. Bushnell obviously received a considerable benefit from the agreed exchange.
 
 
 25
 Defendants' counsel had approached Bushnell and his attorney only after Bushnell had been found guilty of disorderly conduct and resisting arrest. The determination of guilt had by then removed the possibility that the charges against Bushnell were fabricated in order to coerce him into releasing his civil claim against the city and its agents.
 
 
 26
 The district court therefore did not err in granting summary judgment for defendants on the basis that as a matter of law Bushnell's release was valid and enforceable.
 
 
 27
 AFFIRMED.
 
 
 
 *
 Our holding is therefore limited to release agreements negotiated after determination of guilt, but before sentencing. We leave to a future date consideration of the validity of release agreements in exchange for dismissal of criminal charges, negotiated in facially noncoercive circumstances. See Hoines v. Barney's Club, Inc., 28 Cal.3d 603, 170 Cal.Rptr. 42, 620 P.2d 628 (1980)